# EXHIBIT A
## To Complaint of

3M Innovative Properties Company and Dyneon, LLC

v.

Ausimont S.p.A. and Solvay Solexis S.p.A.

The opinion in support of the decision being entered today is
not binding precedent of the Board.

Paper 100

Filed by: Trial Section Merits Panel
Mail Stop Interference
P.O. Box 1450
Alexandria VA 22313-1450
Tel: 571-272-9797
Fax: 571-273-0042

# UNITED STATES PATENT AND TRADEMARK OFFICE

---

# BEFORE THE BOARD OF PATENT APPEALS
# AND INTERFERENCES

---

## WALTER NAVARRINI

Junior Party
(Application 09/840,582),

v.

## ALLAN T. WORM,
## GEORGE G.I. MOORE, MIGUEL A. GUERRA, WERNER SCHWERTFEGER,
## KLAUS HINTZER, ZAI-MING QIU and ERIK D. HARE

Senior Party
(Patent 6,255,536).

---

Patent Interference No. 105,130

---

**DECISION - Motions - Bd. R. 125(a)**
**(Decision on Preliminary Motions)**

Before: MEDLEY, GAUDETTE and NAGUMO, <u>Administrative Patent Judges</u>.[1]

GAUDETTE, <u>Administrative Patent Judge</u>.

---

[1] Senior Administrative Patent Judge McKelvey participated in oral argument, but not in the decision. Administrative Patent Judge Medley did not participate in oral argument. *See In re Bose Corp.*, 772 F.2d 866, 227 USPQ 1 (Fed. Cir. 1985)(change in panel composition after oral argument not error).

Interference No. 105,130
Page 2

1      This interference is before a motions panel for a decision on preliminary motions. Oral

2    argument took place on October 22, 2004, before a court reporter. Paper 93. Representing Junior

3    Party Navarrini at oral argument was John R. Kenny, Esq. of Kenyon & Kenyon, New York,

4    N.Y. Also present was Michael J. Freno, Esq. of Kenyon & Kenyon. Senior Party Worm was

5    represented by Steven B. Kelber, Esq. of Piper Rudnick, LLP, Washington, D.C. Also present

6    was Christopher W. Raimund, Esq. of Piper Rudnick.

7

8    **I. BACKGROUND**

9      A NOTICE DECLARING INTERFERENCE between junior party Navarrini's

10    Application 09/840,582 and senior party Worm's Patent 6,255,536 was mailed on November 4,

11    2003. Paper 1. The Notice contains a single count, Count 1. Navarrini claims 52-57 and Worm

12    claims 7-9 are designated as corresponding to Count 1.

13      An Order Setting Times in the Preliminary Motions Phase was mailed on January 20,

14    2004. Paper 18. On April 26, 2004, both Navarrini and Worm filed their Preliminary Motions 1-

15    3. Papers 26-28 and 32-34. Navarrini Preliminary Motion 1 and Worm Preliminary Motion 2

16    under 37 C.F.R. § 1.633(a) rely on the same prior art disclosures to establish unpatentability of the

17    other party's claims.

18      On May 11, 2004, a conference call was initiated by Worm requesting that the Board grant

19    Worm Preliminary Motion 2 and enter judgment against Navarrini. *See* Paper 40. According to

20    Worm, there is a presumption that Navarrini's claims are unpatentable because Navarrini's

21    Preliminary Motion 1 does not include an explanation as to why the art cited by Navarrini does not

1    apply to Navarrini's claims as required by 37 C.F.R. § 1.637(a). More specifically, Navarrini does

2    not explain why the prior art relied on by Navarrini to establish unpatentability of Worm's claims

3    does not render Navarrini's claims unpatentable. Navarrini was authorized to (Paper 40) and did

4    submit a communication explaining his position, although Navarrini did not concede that Worm's

5    position was correct. *See* Paper 41.

6           On June 9, 2004, Navarrini filed a Miscellaneous Motion 1 for discovery relating to issues

7    raised in Worm's Preliminary Motion 2. Paper 48. *See* Papers 46 and 47. In particular Navarrini

8    sought to cross-examine declarants George G. I. Moore (WX 1007) and Werner M. Grootaeart

9    (WX 1009) and to obtain documents relied on by Worm in support of their assertion that the

10    references cited in Worm Preliminary Motion 2 are not prior art to Worm. Navarrini's

11    Miscellaneous Motion 1 was dismissed as moot in light of 37 C.F.R. § 1.687(b). Paper 49.

12           On September 9, 2004, Worm filed a reply brief in support of its Preliminary Motion 2

13    relying on its preliminary statement in an effort to antedate the prior art relied upon in its moving

14    brief. Paper 71. In response, Navarrini filed a Miscellaneous Motion to Strike, or in the

15    Alternative Respond to, Worm Reply 2. Paper 78.

16           On October 22, 2004, shortly before the Preliminary Motions hearing, the parties were

17    given a list of questions prepared by the motions panel pertaining to Worm claims 8 and 9 and

18    Navarrini claim 56. The parties were asked to provide their responses to those questions prior to

19    presenting their arguments. *See* hearing transcript, Paper 93. The parties were later authorized to

20    file written responses to the questions. Papers 91, 92 and 94.

21           On July 19, 2005, an expanded panel of the Board entered an "ORDER - Explanation of

1  Practice" partially granting Navarrini's Motion to Strike (Paper 78) to the extent that Worm may

2  not rely on the belatedly raised antedating theory.  Paper 97.  Worm requested rehearing of the

3  order.  Paper 98.  The requested relief was denied.  Paper 99.

4  　　　The motions filed by the parties and decided herein are as follows:

5  　　　　　　　**Navarrini's Preliminary Motions**

6  　　　　　　　**Navarrini Preliminary Motion 1**
7  　　　　　　(Paper 26; Opposition, Paper 55; Reply, Paper 67)
8
9  　　　Navarrini has requested that Worm claims 7-9 be held unpatentable under 35 U.S.C. §§ 102

10  & 103 due to U.S. Patent No. 5,696,216 to Kruger, PCT Publication WO 99/48939 to Grootaert,

11  U.S. Patent No. 6,294,627 to Worm and Veretennikov and the work described in these three

12  references.

13  　　　　　　　**Navarrini Preliminary Motion 2**
14  　　　　　　(Paper 27; Opposition, Paper 56; Reply, Paper 68)
15
16  　　　Navarrini has requested that the interfering subject matter be redefined by substituting a

17  new count, proposed Count A, or in the alternative proposed Count B, for Count 1.  Navarrini

18  further requests that Worm claims 7-9 and Navarrini claims 52-57 be designated as corresponding

19  to Proposed Count A or, alternatively, Proposed Count B.  Navarrini contingently moves to add a

20  second count, Count C, if pursuant to Worm's request (see, *infra*, Worm Preliminary Motion 3),

21  Worm claim 8 is not designated as corresponding to Count 1 or Count A or B.  Navarrini also

22  requests that Navarrini claim 56 and Worm claims 8 and 9 be designated as corresponding to

23  proposed Count C.

24

1
2
3
4
5

**Navarrini Preliminary Motion 3**
(Paper 28; Notice of Non-Opposition, Paper 57)

Navarrini has requested benefit of Italian Application No. MI2000 A000901 for proposed

Counts A, B and C. This motion is unopposed.

6
7
8
9
10
11

**Navarrini Preliminary Motion 4**
(Paper 42; Notice of Non-Opposition, Paper 57)

Navarrini has requested benefit of Italian Application No. MI2000 A000901 for proposed

Count D (see, *infra*, Navarrini Preliminary Motion 5) and for Worm's Proposed Count (see, *infra*,

Worm Preliminary Motion 1). This motion is unopposed.

12
13
14
15
16
17
18
19

**Navarrini Preliminary Motion 5**
(Paper 43; Opposition, Paper 58; Reply, Paper 69)

Navarrini has requested that the interfering subject matter be redefined by substituting a

new Count D for all counts in the interference if Worm claims 7 and 8 and Navarrini claim 52 are

held unpatentable and Worm claim 9 is held patentable. Navarrini has further requested the

addition of a new claim, claim 58 to its application and that Worm claim 9 and Navarrini claims 56

and 58 be designated as corresponding to Proposed Count D.

20

**Worm's Preliminary Motions**

21
22
23
24
25

**Worm Preliminary Motion 1**
(Paper 32; Opposition, Paper 59; Reply, Paper 70)

Worm has requested that the interfering subject matter be redefined by substituting a new

Count.

26
27
28
29

**Worm Preliminary Motion 2**
(Paper 33; Opposition, Paper 60; Reply, Paper 71)

Worm has requested that Navarrini claims 52-57 be held unpatentable under 35 U.S.C. §§

1    102 & 103 due to PCT Publication WO 00/12574 and PCT Publication WO 99/48939 to Grootaert.

**Worm Preliminary Motion 3**
(Paper 34; Opposition, Paper 61; Reply, Paper 72)

5    Worm has requested that Worm claim 8 be designated as not corresponding to a count of

6    the interference. Worm has indicated that this motion is contingent on the denial of Worm

7    Preliminary Motion 1.

**Worm Motion to Suppress Evidence**
(Paper 75; Opposition, Paper 80)

11    Worm has also filed a Motion to Suppress passages from the cross-examination deposition

12    of Dr. Dennis Smith (WX 1034)[2].

## II. FINDINGS OF FACT

15    The record supports, by a preponderance of the evidence, the following findings:

### The Technology

17    F1    The invention is directed to fluorovinyl ethers, in particular, perfluoro alkoxymethyl vinyl

18          ethers.

19    F2    Perfluoro alkoxymethyl vinyl ethers may be used as comonomers in copolymerization with

20          other perfluoro olefins to generally impart flexibility and low-temperature performance.

21          WX 1034, p. 10, l. 21- p. 11, l. 8.

22    F3    Perfluoro alkoxymethyl ethers are generally useful in lowering glass transition

23          temperatures, which is one measure of low-temperature performance. WX 1034, p. 11,

---

[2]"WX" designates Worm exhibit. "NX" designates Navarrini exhibit.

1      ll. 9-19.

2                          **The Involved Navarrini Application**

3    F4    The involved Navarrini Application, U.S. Patent Application No. 09/840,582, entitled

4          "Fluoroelastomer," was filed on April 23, 2001.

5    F5    The Navarrini Application has been accorded the benefit of Italian Patent Application No.

6          MI2000 A 000901, filed April 21, 2000 ("the Italian priority document" (NX 2014)).  Paper

7          1, p. 3.

8    F6    Navarrini real party in interest is Solvay Solexis.  Paper 4.   The sole named inventor is

9          Walter Navarrini.

10   F7    The involved Navarrini Application contains claims 52-57, all of which are involved in this

11         interference.  Paper 1, p. 5.

12   F8    Navarrini alleges that a monomer falling within the scope of Count 1 was made on April

13         17, 1996, and a homopolymer of a monomer falling within the scope of Count 1 was made

14         on May 10, 1996.  Paper 29, ¶ 7.

15                            **The Involved Worm Patent**

16   F9    Worm's involved U.S. Patent No. 6,255,536, entitled "Fluorine Containing Vinyl Ethers,"

17         issued on July 3, 2001 from U.S. Patent Application No. 09/470,497 which was filed on

18         December 22, 1999.  WX 1010.

19   F10   The Worm '536 patent  has not been accorded the benefit of any earlier filed application.

20         Paper 1, p. 4.

21   F11   The named inventive entity of the Worm '536 patent are the joint inventors Allan T. Worm,

1    George G. I. Moore, Miguel A. Guerra, Werner Schwertfeger, Klaus Hintzer, Zai-Ming Qiu

2    and Erik D. Hare.  WX 1010.

3    F12    Worm real party in interest is 3M Innovative Properties Co.  Paper 11.

4    F13    The Worm '536 Patent contains claims 1-10.  Paper 1, p. 5.

5    F14    The involved Worm claims are claims 7-9.  Paper 1, p. 5

6    F15    Worm claims 1-6 and 10 are not involved in this interference.  Paper 1, p. 5

7    F16    Worm alleges that the invention of Count 1 was first conceived by the inventors no later

8    than August 31, 1994 and was actually reduced to practice no later than July 3, 1995.  Paper

9    31, ¶¶ 4 & 5.

10    **Experts**

11    **Dr. Harris**

12    F17    Dr. Frank W. Harris testified on behalf of Navarrini.

13    F18    Dr. Harris holds a Ph.D. in chemistry from the University of Iowa in 1968, a B.S. in

14    chemistry from the University of Missouri in 1964 and an M.S. in chemistry from the

15    University of Iowa in 1966.  NX 2013.

16    F19    Dr. Harris made two declarations which are generally directed to the following:

17    1.  A declaration dated April 23, 2004, opining that (a) Worm claims 7-9 are unpatentable

18    over U.S. Patent No. 5,696,216 to Kruger, PCT Publication WO 99/48939 to Grootaert and

19    U.S. Patent No. 6,294,627 and (b) the Navarrini Italian priority document meets the

20    limitations of Navarrini proposed Counts A, B and C.  NX 2012.

21    2.  A declaration dated May 17, 2004, opining that the Navarrini Italian priority

1    document discloses an embodiment meeting the limitations of Navarrini proposed Count D

2    and that Navarrini proposed new claim 58 is supported by the Navarrini application. NX

3    2018.

4    F20    At the time of his testimony, Dr. Harris stated that he was a professor of Polymer Science

5    and Biomedical Engineering and Director of The Maurice Morton Institute of Polymer

6    Science at the College of Polymer Science and Polymer Engineering at the University of

7    Akron. NX 2012, ¶¶ 1 & 2.

8    **Dr. Smith**

9    F21    Dr. Dennis W. Smith, Jr. testified on behalf of Worm.

10    F22    Dr. Smith received a Ph.D. in Chemistry from the University of Florida in 1992 and a B.S.

11    Degree in Chemistry and Mathematics from South West Missouri State University in 1988.

12    WX 1024, ¶ 2.

13    F23    Dr. Smith made a declaration dated July 14, 2004 relating to the Kruger patent. WX 1024.

14    F24    At the time of his testimony, Dr. Smith stated that he was an Associate Professor of

15    Chemistry at Clemson University. WX 1024, ¶ 1.

16    **Dr. Winkler**

17    F25    Dr. Jeffrey D. Winkler testified on behalf of Worm.

18    F26    Dr. Winkler made three declarations which are generally directed to the following:

19    1. A declaration dated April 21, 2004, opining that Worm claim 7 encompasses subject

20    matter which is not encompassed by any of Navarrini claims 52-57 and Navarrini claim

21    52 encompasses subject matter which is not encompassed by any of Worm claims 7-9.

22    WX 1004. In particular, Dr. Winkler testified that the Worm claim 7 compounds not

1    encompassed by Navarrini claims 52-57 are those in which the $R_f$ substituent is $CF_3$, a

2    cyclic perfluoroalkyl group comprising seven or more carbon atoms, and a linear or

3    branched perfluorooxyalkyl group comprising seven or more carbon atoms and/or four

4    oxygen atoms. He further stated that the Navarrini claim 52 compounds not encompassed

5    by Worm claims 7-9 are those compounds having the formula $CFX=CXOCF_2OR$ wherein

6    R is a perfluoroalkyl group or a perfluorooxyalkyl group in which one or two of the fluorine

7    atoms are replaced with H, Cl, Br or I and also wherein X is H.

8    2. A declaration dated April 21, 2004, opining that Navarrini claims 52-57 are

9    unpatentable in view of WO 00/12574. WX 1008.

10    3. A declaration dated April 21, 2004 opining that one of ordinary skill in the art would

11    not have been motivated to modify the compounds of Worm claim 7 or Navarrini claims

12    52, 56 and 57 to arrive at the compound defined by Worm claim 8. WX 1011.

13  F27   At the time of his testimony, Dr. Winkler stated that he was a professor of Chemistry at the

14    University of Pennsylvania. WX 1008, ¶ 1.

15                                   **Other Declarants**

16                                   **Dr. Grootaert**

17  F28   Dr. Werner M. A. Grootaert testified on behalf of Worm.

18  F29   Dr. Grootaert is the named inventor of International Publication No. WO 99/48939

19    ("Grootaert '939"), published September 30, 1999, from PCT Application No. US

20    99/03490, filed February 18, 1999. WX 1006.

21  F30   According to Dr. Grootaert, at the time the PCT application was filed in 1999, he was an

22    employee of Dyneon LLC, a wholly owned subsidiary of 3M Company (formerly known as

1        Minnesota Mining and Manufacturing Company).  WX 1009, ¶ 1.

2   F31   Dr. Grootaert stated that during preparation of the PCT application, he discussed with other

3        researchers at Dyneon and 3M possible useful perfluorovinyl ethers that might be used in

4        conjunction with his invention.  WX 1009, ¶ 3.

5   F32   According to Dr. Grootaert, one of the individuals with whom he spoke was George Moore,

6        whom he understood to be an inventor of the involved Worm '536 patent.  WX 1009, ¶ 4.

7                                   **Dr. Moore**

8   F33   Dr. George G. I. Moore testified on behalf of Worm.

9   F34   Dr. Moore is a named inventor on the Worm '536 patent.  WX 1010.

10   F35   At the time of his declaration, Dr. Moore stated that he was a scientist and employee at 3M.

11        WX 1007, ¶ 1.

12   F36   According to Dr. Moore, he and Alan Worm were colleagues at 3M and Dyneon.  WX

13        1007, ¶ 3.

14   F37   Dr. Moore stated that he was "aware of" Worm's work with co-inventors Veretennikov,

15        Volkova and Sokolov on the subject matter of International Publication No. WO 00/12574

16        ("the '574 publication").  WX 1007, ¶ 3.

17   F38   According to Dr. Moore, he and Allan Worm are the co-inventors of the compounds of

18        claims 7-9 of the Worm '536 patent.  WX 1007, ¶ 5.

19   F39   Dr. Moore testified that he worked with Allan Worm and the other co-inventors of the

20        Worm '536 patent in arriving at the processes that are the subject matter of claims 1-6 and

21        10 of the Worm '536 patent.  WX 1007, ¶ 5.

22

1                     **Level of Ordinary Skill in the Art**

2   F40   The relevant time periods for assessing the level of ordinary skill in the art are December

3           1999, the filing date of the Worm '536 Patent, and April 2000, the filing date of the

4           Navarrini Italian priority document.

5   F41   The relevant art is fluorine chemistry or fluoropolymer chemistry, the latter being defined

6           as fluorine chemistry dealing with polymers. WX 1034, p. 96, l. 11-p. 97, l. 2.

7   F42   According to Dr. Harris, one of ordinary skill in *fluorine chemistry* is someone with a

8           Master's degree in Chemistry or its equivalent education and several years of laboratory

9           experience. NX 2012, ¶ 7.

10   F43   According to Dr. Smith, a person of ordinary skill in *fluoropolymer chemistry* is someone

11          with a Master's Degree in Chemistry or its equivalent education and several years of

12          laboratory experience. WX 1024, ¶ 6.

13   F44   According to Dr. Winkler, one of ordinary skill in the *chemical arts* as of December 1999

14          and April 2000 "was a person having a B.S. or equivalent degree in Chemistry and at least

15          three years of work experience as a chemist." WX 1008, ¶ 7 and WX 1011, ¶ 11.

16   F45   During his deposition, Dr. Harris was questioned about the level of ordinary skill in the art

17          and provided the following testimony (NX 2029, p. 14, l. 10-p. 15, l. 7):

18
19               Q. Can you tell me what the difference in the level of education is between an
      individual in polymer chemistry holding a bachelor degree as opposed to a masters degree.
20
21               A. In general someone with a masters degree will have taken more courses in
22       polymer science, will have possibly conducted research in polymer science, would have
23       been exposed to more polymer science literature. That's some of the general.
24               Q. In connection with the preparation and use of perfluorovinyl ether monomers
25       what skills would be important to a chemist that somebody at a masters level would know
26       and somebody at a bachelors level would not know?

1          A.    Well, I would say that someone at a masters level would have had more of an

2    opportunity to have read the literature, possibly been exposed to some perfluoro elastomers

3    either through course work or through just studying the literature.

4          Q.    Focusing on those individuals, what kind of laboratory experience would they

5    gain in their first three years following their masters degree?

6          A.    Following their masters degree?

7          Q.    Yes.

8          A.    Well, hopefully they'd only go two more degree years because most –

9        .  .  .

10

11          Q.    Let's talk about what you describe as one of general skill in the art.

12          A.    Okay.

13          Q.    What type of laboratory experiences do they -- does the person of ordinary

14    skill in the art to which your testimony is directed have?

15          A.    Well, I would think they would be someone who has, obviously has research

16    background and who would be capable of carrying out research, would be capable of

17    studying literature, would be capable of searching the literature for scientific information.

18

19    F46    The experts' declaration testimonies describing skill level based solely on degrees and years

20    working in the field are not particularly helpful.  The skills or knowledge of a person

21    having a B.S. or M.S. degree in chemistry have not been made of record.  Nor are the skills

22    that one would have as a result of having worked for three or more years as a chemist or in

23    a laboratory a matter of common knowledge susceptible of "judicial notice".[3]

24    F47    Dr. Harris' deposition testimony describes the knowledge and skills of the ordinary artisan

25    with somewhat greater particularity.  Accordingly, we credit Dr. Harris' deposition

26    testimony in our finding as to the level of ordinary skill in the art.

27    F48    We find that one of ordinary skill in the art in December 1999 and April 2000 would have a

---

[3]"The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art. The actual inventor's skill is not determinative.  Factors that may be considered in determining level of skill include: type of problems encountered in art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field. Not all such factors may be present in every case, and one or more of them may predominate." *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 962, 1 USPQ2d 1196, 1201 (Fed. Cir.1986).

1    master's degree in chemistry with an emphasis on courses in polymer chemistry.  We

2    further find that such individual would have had several years of laboratory experience with

3    fluoropolymers and additives, and would be familiar with current polymer science

4    literature.

5                    **The Count and Proposed Substitute Counts**

6    F49    Count 1 reads:

7              The perfluorovinyl ether according to claim 7 of Worm.

8    F50    Worm Claim 7, the broadest involved Worm claim, reads as follows:

9              A perfluorovinyl ether having the formula $R_fOCF_2OCF=CF_2$[4] wherein: $R_f$ is a

10    linear, branched or cyclic perfluorinated aliphatic group that may contain oxygen atoms

11    forming additional ether linkages and that does not contain any sites of terminal

12    unsaturation.

13    F51    Navarrini Claim 52, the broadest involved Navarrini claim, reads:

14              A fluorovinyl ether of formula $CFX=CXOCF_2OR$ (I) wherein:

15    1)    R is a $C_2$-$C_6$ linear or branched perfluoroalkyl group, a $C_5$-$C_6$ cyclic perfluoroalkyl

16          group, or a linear or branched perfluorooxyalkyl group comprising 2 to 6 carbon

17          atoms and 1 to 3 oxygen atoms;

18    2)    up to two fluorine atoms of the perfluoroalkyl group or the perfluorooxyalkyl group

19          can be independently replaced with atoms selected from the group consisting of H,

20          Cl, Br, and I; and

---

[4]This formula is also expressed in the record as $CF_2=CFOCF_2OR_f$.

1        3)    X is F or H.

2    F52    Navarrini has proposed redefining the interfering subject matter by substituting either

3        Count A or Count B for Count 1.  Paper 27.

4                          **Navarrini Counts A and B**

5    F53    Navarrini Proposed Count A reads:

6            A fluorovinyl ether having the formula $CFX=CXOCF_2OR_C$ wherein:

7            (1) $R_C$ is a linear, branched or cyclic perfluorinated aliphatic group that may

8        contain oxygen atoms forming additional ether linkages and that does not contain any

9        sites of terminal unsaturation, and up to two fluorine atoms of the perfluorinated aliphatic

10       group can be replaced with atoms selected from the group consisting of H, Cl, Br or I; and

11           (2) X is F or H.

12   F54    Navarrini Proposed Count B reads:

13           A fluorovinyl ether having the formula $CFX=CXOCF_2OR_C$ wherein:

14           (1) $R_C$ is a linear, branched or cyclic perfluorinated aliphatic group that may

15       contain oxygen atoms forming additional ether linkages and that does not contain any

16       sites of terminal unsaturation; and

17           (2) X is F or H.

18   F55    Proposed Count A is broader than Count 1 in that it allows for non-fluorine substituents on

19       the carbon atoms of the vinyl group (i.e., X is F or H) and for up to two fluorine atoms of

20       the perfluorinated aliphatic group ($R_c$) to be replaced with H, Cl, Br or I.

21   F56    Proposed Count B is also broader than Count 1 in that it allows for non-fluorine

22       substituents on the carbon atoms of the vinyl group (i.e., X is F or H), but narrower than

Interference No. 105,130
Page 16

| | | |
|---|---|---|
| 1 | | Count A in that it does not allow for substitution of the fluorine atoms of the perfluorinated |
| 2 | | aliphatic group ($R_c$). |
| 3 | F57 | Navarrini maintains that all of the claims in the interference, i.e., Worm claims 7-9 and |
| 4 | | Navarrini claims 52-57 correspond to proposed Counts A and B. |

**Worm's Count**

| | | |
|---|---|---|
| 6 | F58 | Worm has proposed the following substitute Count: |
| 7 | | A perfluorovinyl ether according to Claim 9 of United States Patent No. 6,255,536 |
| 8 | | B1. |
| 9 | F59 | Worm claim 9 is directed to a species within the genus of claim 7 and reads: |
| 10 | | A perfluorovinyl ether according to claim 7 wherein $R_f$ is $CF_2CF_3$. |
| 11 | F60 | Worm's Count is, therefore, directed to a single compound having the formula: |
| 12 | | $CF_2=CF-O-CF_2O-CF_2CF_3$. |
| 13 | F61 | Worm claim 9 and Navarrini claim 56 are directed to the same compound. |
| 14 | F62 | According to Worm, all of the claims currently involved in the interference correspond to |
| 15 | | the proposed new count with the exception of Worm claim 8. Worm does not give a reason |
| 16 | | as to why Worm claim 8 does not correspond. Paper 32, p. 7. |
| 17 | F63 | Worm Claim 8 is directed to a species within the genus of claim 7 and reads: |
| 18 | | A perfluorovinyl ether according to Claim 7 wherein $R_f$ is $CF_3$. |
| 19 | F64 | Worm claim 8 is, therefore, directed to a single compound having the formula: |
| 20 | | $CF_2=CF-O-CF_2O-CF_3$. |
| 21 | F65 | The compounds of Worm claim 8 and Worm claim 9/Navarrini claim 56 are part of an |
| 22 | | adjacent homologous series. |

1   F66   A "homologous series" is a series of compounds whose structures differ regularly by the

2        successive addition of the same chemical group. The members of the series are called

3        "homologues." *See, e.g., In re Wilder*, 563 F.2d 457, 458, 195 USPQ 426, 428 (CCPA

4        1977).

5   F67   According to Dr. Winkler, "[t]he general formula of Claim 7 of the '536 patent embraces

6        an unlimited number of compounds." WX 1011, ¶ 18.

7   F68   Dr. Winkler further testified:

8            It is . . . my opinion that one of ordinary skill in the chemical arts would
9       not be motivated to select the particular compound defined by Claim 8 given the
10     general formula of Claim 7 which encompasses an unlimited number of
11     compounds.
12          In particular, I am aware of no published documents which were available
13     as of December 1999 which would have suggested to one of ordinary skill in the
14     chemical arts, given the general formula of Claim 7, to select the particular
15     compound defined by Claim 8 from among the compounds defined by that general
16     formula.
17          It is also my opinion that the level of skill in the chemical arts as of
18     December 1999 was such that one of ordinary skill in the chemical arts, given the
19     general formula of Claim 7 of the '536 patent, would not have been motivated to
20     select the particular compound defined by Claim 8 of the '536 patent from among
21     the compounds defined by that general formula absent a teaching or suggestion in
22     a published document.
23
24     WX 1011, ¶¶ 23-25.

25   F69   According to Dr. Winkler, "Claim 9 . . . defines a compound that is different and

26        distinct from that defined by Claim 8." WX 1011, ¶ 8.

27   F70   Dr. Winkler testified that one of ordinary skill in the art in December 1999 would not

28        have been motivated to substitute a -$CF_3$ group for the -$CF_2CF_3$ group in the Worm claim

29        9 compound ($CF_2=CFOCF_2OCF_2CF_3$) to produce the Worm claim 8 compound

30        ($CF_2=CFOCF_2OCF_3$) absent a teaching or suggestion in a published document.  WX

| | | |
|---|---|---|
| 1 | | 1011, ¶¶ 12 & 13. |
| 2 | F71 | Dr. Winkler stated that he was not aware of any published documents available in |
| 3 | | December 1999 which would have suggested the compound defined by Worm claim 8 |
| 4 | | given the Worm claim 9 formula . WX 1011, ¶ 12. |
| 5 | F72 | Dr. Winkler does not explain why a "published document" would have been necessary to |
| 6 | | motivate one of ordinary skill in the art to select the Worm claim 8 compound.  Dr. |
| 7 | | Winkler also does not explain what he means by the term "published document." |
| 8 | F73 | When asked whether he took into account the fact that patent disclosures could be prior |
| 9 | | art as of the filing dates, Dr. Winkler stated "I don't remember doing that."  NX 2021, p. |
| 10 | | 158, l. 19 - p. 159, l. 4. |
| 11 | F74 | Dr. Winkler acknowledged that $CF_2=CFOCF_2OCF_2CF_3$ (Worm claim 9/Navarrini claim |
| 12 | | 56 compound) and $CF_2=CFOCF_2OCF_3$ (Worm claim 8 compound) are adjacent |
| 13 | | homologues and, therefore, structurally similar.  NX 2021, p. 83, ll. 9-22. |
| 14 | F75 | Dr. Harris stated that given their structural similarities as adjacent homologues, the |
| 15 | | compounds of Worm claim 8 and Navarrini claim 56,would have been expected to have |
| 16 | | similar properties.  NX 2012, ¶ 67. |
| 17 | F76 | According to the parties, there is no evidence of record comparing the actual properties |
| 18 | | of the Worm claim 8 compound and the Worm claim 9/Navarrini claim 56 compound. |
| 19 | | Paper 93, p. 12, ll. 18-22. |
| 20 | F77 | During his deposition, Dr. Harris conceded that the Worm claim 8 compound could not |
| 21 | | be made according to the Navarrini supporting disclosure.  NX 2029, p. 122, l. 3-p. 123, |
| 22 | | l. 5; p. 125, l. 21-p. 126, l. 3. |

| | | |
|---|---|---|
| 1 | F78 | However, according to Dr. Harris, the following synthetic scheme for synthesizing the |
| 2 | | Worm claim 8 compound would have been known to those of ordinary skill in the art as |
| 3 | | of January 1, 2000.  NX 2029, p. 66, l. 24- p. 67, l. 4. |
| 4 | | $CF_3OCF_2OF + CFCl=CFCl \rightarrow ClCF_2ClCFOCF_2OCF_3 \xrightarrow{Zn} CF_2=CFOCF_2OCF_3$ |
| 5 | | WX 1015. |
| 6 | F79 | Dr. Harris testified that he was aware of a 1990 Japanese patent publication disclosing a |
| 7 | | synthetic scheme which could have been modified to achieve his proposed synthesis. |
| 8 | | NX 2029, p. 100, l. 18-p. 101, l. 20. |
| 9 | F80 | Dr. Harris further stated that one of ordinary skill in the art would have known how to |
| 10 | | make these modifications.  NX 2029, p. 102, l. 20-p. 103, l. 15. |
| 11 | F81 | Dr. Harris does not state what modifications would be required. |
| 12 | F82 | Dr. Harris was unable to remember any details regarding the Japanese patent other than |
| 13 | | he believed it was owned by Ausimont.  NX 2029, p. 101, ll. 21-24. |
| 14 | F83 | The record does not include a copy of this alleged publication. |
| 15 | F84 | It appears from the parties' arguments that the critical starting material is the |
| 16 | | fluorovinylether $CF_3OCF_2OF$, which has the compositional formula $C_2O_2F_6$. |
| 17 | F85 | A search of the Registry file of Chemical Abstracts, which contains 27 million |
| 18 | | compounds, revealed three compounds having the formula $C_2O_2F_6$, none of which |
| 19 | | matches Dr. Harris' starting material.  (*See* attached search). The three compounds are: |
| 20 | | 1. $F_3C$-O-O-$CF_3$ |
| 21 | | 2. $F_3C$-$CF_2$-O-O-F |
| 22 | | 3. $F_3C$-$CF(OF)_2$ |
| 23 | F86 | However, Navarrini also points out that Dr. Smith acknowledged that there was a |

1        general known synthesis for making vinyl ethers using acid fluoride chemistry.

2    F87    Dr. Smith illustrated this technique for synthesis of the compound

3        $CF_2=CFOCF_2CF_2CF_2OCF_3$ (WX 1024, ¶ 17) using $CF_3OCF_2CF_2OCF$ (fluoroformate)

4        and HFPO as starting materials. NX 2037, p. 66, ll. 12-16 and p. 67, l. 15-p. 68, l. 1; NX

5        2033.

6    F88    According to Dr. Smith, HFPO, has been available since before the 1990's. WX 1034,

7        p. 90, l. 14-p. 91, l. 3.

8    F89    In the $CF_3OCF_2CF_2OCF$ (fluoroformate) starting material, Dr. Smith identified the $R_f$

9        group as $CF_3OCF_2CF_2-$. NX 2033.

10    F90    According to Dr. Smith, in the synthesis of $CF_2=CFOCF_2OCF_3$, the $R_f$ group would be

11        $-OCF_3$. NX 2037, p. 78, ll. 10-19.

12    F91    However, Dr. Smith maintained that he would not expect the synthesis illustrated in NX

13        2033 to be used for synthesis of $CF_2=CFOCF_2OCF_3$ due to difficulties in preparing the

14        starting fluoroformate. WX 1034, p. 79, l. 20-p. 80, l. 10.

15    F92    On the other hand, Dr. Smith conceded that he did not have any reason to believe that

16        the chemistry of NX 2033 would not work for synthesis of $CF_2=CFOCF_2OCF_3$ if a stable

17        fluoroformate were available. WX 1034, p. 80.

18    F93    Navarrini has proposed adding a second count, Count C, if Worm claim 8 is not

19        designated as corresponding to the current Count or Navarrini Proposed Counts A or B.

20                          **Navarrini Count C**

21    F94    Navarrini Proposed Count C reads:

22

1        A perfluorovinyl ether of formula $CF_2=CFOCF_2OR_c$, wherein $R_c$ is $CF_3$ or $CF_2CF_3$.

2   F95   Navarrini maintains that Navarrini claim 56 and Worm claims 8 and 9 should be

3        designated as corresponding to proposed Count C.

4   F96   Navarrini has also proposed substituting a new Count D for all counts in the

5        interference, contingent on a finding that Worm claims 7 and 8 and Navarrini claim 52

6        are unpatentable and Worm claim 9 is patentable.

7        **Navarrini Count D**

8   F97   Navarrini's Proposed Count D reads:

9        A fluorovinyl ether having the formula $CFX=CXOCF_2OCF_2CF_3$, where X is F or

10       H.

11   F98   Stated another way, Navarrini's Proposed Count D is directed to a fluorovinyl ether

12        having one of the following two formulas:

13        $CF_2=CF_2OCF_2OCF_2CF_3$ and $CFH=CHOCF_2OCF_2CF_3$

14   F99   Navarrini's Proposed Count D is the same as Worm's proposed substitute count, Worm

15        claim 9 and Navarrini claim 56, when X is F, i.e.:

16        A perfluorovinyl ether having the formula $CF_2=CF_2OCF_2OCF_2CF_3$ .

17   F100  Navarrini has proposed an amendment adding a new claim, Navarrini claim 58, directed

18        to the second compound of Navarrini's Proposed Count D.

19   F101  Navarrini proposed claim 58 reads as follows:

20        A fluorovinyl ether having the formula $CFH=CHOCF_2OCF_2CF_3$.

21        Paper 43, Addendum A, p. 3.

22

1                                  **The Prior Art**

2                                  **'574 Publication**

3   F102   WO 00/12574 (the '574 publication) published on March 9, 2000, from PCT

4          Application US 99/16561, filed July 21, 1999, and is the equivalent of U.S. Patent No.

5          6,294,627. WX 1005.

6   F103   The '574 publication is not available as a prior art reference against the claims of the

7          Worm '536 patent.

8   F104   The '574 publication discloses perfluorinated ethers of the general formula:

9          $CF_2=CFO-(CF_2)_m-(O(CF_2)_p)_nOR_f^l$ wherein $R_f^l$ is a perfluorinated $(C_1-C_4)$ alkyl group;

10         $m = 1-2$; $n = 0-6$; and $p = 1-2$. WX 1005, p. 4, ll. 20-28.

11  F105   Dr. Moore testified that the invention of the subject matter of this general formula is that

12         of Worm. WX 1007, ¶ 4.

13  F106   Dr. Moore bases his belief on his recollection that Worm was the first person to show

14         him the structure and identify the objective of making compounds having the general

15         formula of the '574 publication at a meeting in 1994. Moore could not confirm that

16         Worm did not receive the formula from someone else. WX 1029, p. 52, ll. 10-15 and p.

17         54, l. 6-p. 55,    l. 15.

18  F107   The '574 publication general formula encompasses the Navarrini claim 56 compound

19         $(CF_2=CFO-CF_2-OCF_2CF_3)$ when $R_f^l$ is the perfluorinated $C_2$, alkyl group; $m = 1$ and $n =$

20         0.

21  F108   This formula also encompasses the Navarrini claim 57 compound

22         $(CF_2=CFO-CF_2-OCF_2CF_2-OCF_3)$ when $R_f^l$ is the perfluorinated $C_1$, alkyl group (*i.e.*, -

1          $CF_3$); m = 1, n = 1 and p = 2.

2    F109   There are no specific examples in the '574 publication of compounds wherein m = 1.

3    F110   The '574 publication discloses that it is desirable to increase -$CF_2O$- linkages in a

4               fluoropolymer in order to increase the O/C ratio of the polymer. WX 1005, p. 5, ll. 25-

5               27.

6    F111   The '574 publication teaches that fluoropolymers having higher O/C ratios have lower

7               glass transition temperatures. WX 1005, p. 5, ll. 14-16.

8    F112   The '574 publication also discloses that it is desirable to increase the quantity of -

9               $OCF_2CF_2$- linkages in a fluoropolymer. WX 1005, p. 5, ll. 25-27.

10                                            **WV '627**

11    F113   U.S. Patent No. 6,294,627 ("WV '627 patent") is the U.S. equivalent of the '574

12               publication.

13    F114   The WV '627 patent issued on September 25, 2001 from U.S. Application Serial No.

14               09/313,438, filed May 18, 1999 ("WV '438 application").

15    F115   Dyneon, LLC is listed as the assignee on the face of the WV '627 patent.

16    F116   The named inventors of the WV '627 patent are Allan T. Worm, Nikolai Vladimirovich

17               Veretennikov, Margarita Alekseevna Volkova, and Sergey Vasilievich Sokolov.

18    F117   Veretennikov, Volkova and Sokolov are said to be unavailable to testify. WX 1007, ¶ 3.

19    F118   The WV '438 application claims the benefit of U.S. Provisional Application No.

20               60/098,461, filed August 31, 1998 ("WV provisional").

21    F119   The WV provisional, WV '438 application and WV '627 patent disclose perfluorinated

22               vinyl ether compounds having the general formula I:

Interference No. 105,130
Page 24

1    $CF_2=CFO-(CF_2)_m-(O(CF_2)_p)_mOR_f^1$ wherein $R_f^1$ is a perfluorinated $(C_1-C_4)$ alkyl group;

2    m = 1-2; n = 0-6; and p=1-2.  WV provisional, p. 26, l. 7, WV '438 application p. 24, l.

3    13 and WV '627 patent, col. 14, l. 56.

4    **Grootaert '939**

5    F120    Grootaert filed PCT/US99/03490 on February 18, 1999.

6    F121    The application  published on September 30, 1999 as PCT Publication WO 99/48939

7            ("Grootaert '939 ").

8    F122    Grootaert '939 claims the benefit of U.S. Provisional application 60/079,061, filed in the

9            United States on March 23, 1998 ("Grootaert provisional").

10   F123    The formula $CF_2=CFOCF_2OCF_2CF_2CF_3$ appears in Grootaert '939 and the Grootaert

11           provisional.

12   F124    George Moore testified that he invented the class of compounds which includes the

13           Grootaert '939 formula $CF_2=CFOCF_2OCF_2CF_2CF_3$:

14                   Based on our discussions, I am of the belief that Alan T. Worm first
15           identified the general formula of perfluorinated ethers set forth at page 4, lines 20-
16           28 of the '574 publication.  In response to these discussions of such monomers, I
17           identified the class $CF_2=CFO-CF_2-O-R_f^1$, that results when m is 1 and n is 0, and
18           which includes the compound $CF_2=CF-O-CF_2O-CF_2CF_3$, where $R_f^1$ is $-CF_2CF_3$, as
19           a class which our existing fluorination technology might produce, and we agreed
20           upon this type as an initial goal.
21

22           WX 1007, ¶ 4.

23   F125    The Grootaert provisional and Grootaert '939 list Werner Grootaert as the sole inventor.

24   F126    Grootaert testified that he worked for 3M/Dyneon LLC and that Moore and Worm also

25           worked for 3M/Dyneon LLC.  WX 1009, ¶ 3.

1  F127  Grootaert testified as follows with regard to the compound $CF_2=CF-O-CF_2O-CF_2CF_2CF_3$

2  which appears in Grootaert '939:

3  At page 5, line 8 of the '939 publication a useful perfluorovinyl ether is identified
4  according to the chemical formula $CF_2=CF-O-CF_2O-CF_2CF_2CF_3$. George Moore
5  specifically suggested this perfluorovinyl ether, with which he was familiar, as potentially
6  useful in this subject matter of the '939 publication.
7  Accordingly, I am not the inventor of that particular perfluorovinyl ether. . . .
8
9  WX 1009, ¶¶ 5 & 6.

10  **Kruger**

11  F128  U.S. Patent No. 5,696,216 ("Kruger") issued on December 9, 1997.  NX 2002.

12  F129  Kruger issued from U.S. Application Serial No. 08/747,736, ("the Kruger U.S.

13  application") filed November 12, 1996.

14  F130  Kruger claims the benefit of German Application No. DE 195 42 501.4 ("Kruger

15  German priority document"), filed November 15, 1995.

16  F131  The named inventors on the Kruger patent are Ralf Kruger, Govert Woeste, Tatyana

17  Alexandrovna Filchakova, Alexandr Nikolaevich Kollar, Sergey Vasilyevich Sokolov,

18  Mark Peysakhovich Greenblat and Nikolay Vladimirovich Veretennikov.

19  F132  Sokolov and Veretennikov are also named inventors on the WV '627 patent.

20  F133  Bayer Aktiengesellschaft is listed as the assignee on the face of the Kruger patent.

21  F134  Kruger "relates to peroxide crosslinkable fluororubbers prepared from polymerized units

22  of vinylidene fluoride, at least one fluorinated propene and/or a fluorinated methyl vinyl

23  ether, at least one perfluoro(polyoxaalkyl vinyl ether), optionally tetrafluoroethylene, and

24  crosslinking-active reactive sites, to a process for the production thereof and to the use

25  thereof." NX 2002, col. 1, ll. 6-12.

1   F135   Kruger states that the perfluoro(polyoxaalkyl vinyl ethers) of the invention are

2          compounds of the formula (I): $CF_2=CF-O-R_F$, wherein

3          $R_F = -(CF_2)_m(-O-CF_2)_n-O-CF_3$ where

4          m=3 and n=0 or m=2 and n=1-4, wherein the combinations m=2 and n=1-4 and m=3 and

5          n=0 is preferred, or wherein $R_F = -(CF_2-CF_2-O)_p-C_qF_{2q+1}$ where p=1-4 and q=1 or 2,

6          preferably p=1-4 and q=1.  NX 2002, claim 1.

7   F136   The Kruger patent states that this formula thus includes compounds having the formulae:

8          $CF_2=CF-O-(CF_2)_m-OCF_3$ where m=3 and with n=0                                    (Ia)
9          $CF_2=CF-O-CF_2-CF_2-(OCF_2)_n-OCF_3$ where n=1-4 and with m=2                        (Ib)
10         $CF_2=CF-O-(CF_2O)_p-CF_3$ where p=1-4 and with n [sic, q] =1                         (Ic)
11         $CF_2=CF-O-(CF_2-CF_2O)_p-CF_2-CF_3$ where p=1-4 and with n [sic, q] =2               (Id)
12
13         NX 2002, col. 2, l. 53-col. 3, l. 2.

14  F137   The compounds of formula (Ic) as this formula appears in the Kruger patent are:

15         $CF_2=CF-O-CF_2O-CF_3$                    p=1
16         $CF_2=CF-O-CF_2O-CF_2-O-CF_3$             p=2
17         $CF_2=CF-O-CF_2O-CF_2O-CF_2O-CF_3$        p=3
18         $CF_2=CF-O-CF_2O-CF_2O-CF_2O-CF_2O-CF_3$  p=4

19         WX 1034, p. 18, l. 12-p. 19, l. 8 (NX 2030).

20  F138   The disclosures in the Kruger U.S. application relating to formulas (I) and (Ic) are the

21         same as those in the Kruger patent.

22  F139   The Kruger German priority document (WX 1016 & translation WX 1017) identifies

23         formula (Ic) as:  $CF_2=CF-O-(CF_2CF_2O)_p-CF_3$

24                          **Prior Art Motions**

25  F140   Navarrini moves for judgment that Worm claims 7-9 are unpatentable under 35 U.S.C.

26         §§ 102 & 103 over U.S. Patent No. 5,696,216 to Kruger, PCT Publication WO 99/48939

1    to Grootaert and U.S. Patent No. 6,294,627.   Navarrini Preliminary Motion 1 (Paper

2    26).

3   F141   Worm maintains that the subject matter defined by the genus of the general formula I

4    disclosed in the WV '627 patent is not available as prior art against the Worm '536

5    patent claims because Worm is the sole inventor of this subject matter.  Paper 55, pp. 21-

6    22.

7   F142   However, on its face, the WV '627 patent qualifies as prior art to the Worm '536 patent

8    under 35 U.S.C. § 102(e) because it lists a different inventive entity than the Worm '536

9    patent.

10   F143   Worm maintains that Grootaert '939 is not available as prior art to Worm because the

11    disclosure relied upon by Navarrini is the work of George Moore, one of the named

12    inventors on the Worm '536 patent.  Paper 55, p. 20; Paper 33, p. 25.

13   F144   Worm moves for judgment that Navarrini claims 52-57 are unpatentable under 35

14    U.S.C. §§ 102 & 103 due to PCT Publication WO 00/12574 and PCT Publication WO

15    99/48939 to Grootaert.  Worm Preliminary Motion 2.  Paper 33.

16   F145   Worm does not expressly rely on the WV '627 patent as rendering Navarrini's claims

17    unpatentable.

18   F146   Since the WV '627 patent is admittedly the equivalent to the '574 publication, Worm

19    implicitly asserts that Navarrini's claims are unpatentable over the WV '627 patent as

20    well.

21   F147   Navarrini concedes that Navarrini claims 52-56 overlap with Worm claims 7-9 and that

22    the Board's findings as to the patentability of Worm's claims in view of the prior art

1    apply to Navarrini's claims as well.  Paper 41, p. 1.

2    **Expert Testimony Regarding Grootaert '939**

3    F148    Dr. Harris testified that Grootaert '939 anticipates Worm claim 7 because Grootaert's

4    disclosure of the formula $CF_2=CFOCF_2OCF_2CF_2CF_3$ satisfies the Worm claim 7 formula

5    for $R_f=CF_2CF_2CF_3$.  NX 2012, ¶ 32.

6    F149    Dr. Harris testified that Grootaert '939 suggests Worm claims 8 and 9 because the

7    compounds $CF_2=CFOCF_2OCF_2CF_2CF_3$ (Grootaert '939), $CF_2=CFOCF_2OCF_2CF_3$ (Worm

8    claim 9) and $CF_2=CFOCF_2OCF_3$ (Worm claim 8) are adjacent members of a homologous

9    series.  NX 2012, ¶ 34.

10    **Expert Testimony Regarding WV '627**

11    F150    Dr. Harris stated that the general formula I, $CF_2=CFO-(CF_2)-(O(CF_2)_p)OR_f^1$ , where m=1

12    may be written in the format of Worm claim 7 as follows:

13    $CF_2=CFOCF_2O-R_f$ where $R_f=(R_f^1$ (when n=0) and $(CF_2)_p(O(CF_2)_p)_{n-1}OR_f^1$ (when n=1-6)),

14    where $R_f^1$ is a perfluorinated $(C_1-C_4)$ alkyl group and p=1-2.  NX 2012, ¶ 43.

15    F151    Dr. Harris testified that Worm claim 7 reads on every compound encompassed by

16    general formula I of the WV '627 patent when m=1.   NX 2012, ¶ 46.

17    **Expert Testimony Regarding the Kruger Patent**

18    F152    Dr. Smith testified that formula (Ic) as written in the Kruger patent is a mistake.

19    WX 1034, p. 24, l. 17-p. 25, l. 19; p. 66, ll. 21-22.

20    F153    Dr. Smith believes that Example 2 of the Kruger patent shows the correct formula (Ic).

21    WX 1034, p. 33, ll. 5-9.

22    F154    On the other hand, Dr. Smith also stated that there are no obvious errors in the structure

1    of the formula (Ic) compound if looked at in isolation.  WX 1034, p. 30, ll. 4-18.

2    F155    According to Dr. Smith, the four subsets of compounds available under Kruger formula

3    (I) are:

4    $CF_2=CF-O-CF_2CF_2CF_2-O-CF_3$ where m=3 and with n=0         (Ia)
5    $CF_2=CF-O-CF_2CF_2-(O-CF_2)_{1-4}-OCF_3$ where n=1-4 and with m=2    (Ib)
6    $CF_2=CF-O-(CF_2-CF_2-O-)_{1-4}-CF_3$ where p=1-4 and with q=1    (Ic)
7    $CF_2=CF-O-(CF_2CF_2-O-)_{1-4}-CF_2CF_3$ where p=1-4 and with q=2    (Id)
8
9    WX 1024, ¶ 17.

10    F156    Dr. Smith states that using Kruger's definitions of $R_f$ and subscripts m, n, p and q,

11    Kruger's formula (I) requires at least one of the following substructures:

12    $CF_2=CF-O-CF_2CF_2CF_2-O$   or   $CF_2=CF-O-CF_2CF_2-O$

13    WX 1024, ¶ 20.

14    F157    According to Dr. Smith, the use of the subscript "p" in formula (Ic) would have led one

15    of ordinary skill in the art to substitute the divalent radical $(-CF_2CF_2O)_p$ from formula (I)

16    of the Kruger patent for the $(-CF_2O)_p$ in formula (Ic) to arrive at the correct formula.

17    WX 1024, ¶ 23.

18    F158    Dr. Smith also maintains that Kruger does not teach a process for making compounds

19    embraced by formula (Ic) as it appears in the Kruger patent and that a person of ordinary

20    skill in the art would not have been able to make or use a compound having formula (Ic)

21    as it appears in the Kruger patent.  WX 1024, ¶¶ 25 & 27.

22    F159    According to Dr. Smith, neither the Kruger patent nor any of the references cited therein

23    teach how to make a compound with an $OCF_2OCFCF_2$ group and one of ordinary skill in

24    the art would not have been able to make a compound of formula (Ic) using the Kruger

1      disclosure, including the references cited therein.  NX 2037, p. 46, l. 19-p. 47, l. 19;

2      WX 1024, ¶¶ 31 & 33.

3    F160   Dr. Smith testified that "[t]here's something very unique about an isolated $CF_2$ group

4      between two oxygens." NX2037, p. 77, ll. 8-9.  Dr. Smith maintained that the synthesis

5      of an -O-$CF_2$O-$CF_3$- group would be more difficult that the synthesis of an -O-

6      $CF_2CF_2CF_2$O-$CF_3$- group  (NX2037, p. 77, ll. 15-18), explaining that one "would have to

7      start with an acid fluoride that was what we call a fluoroformate.  So it would have to

8      have another oxygen unit there, and those are known but less predictable, I would say

9      and more reactive definitely.  And so that's what makes the lone $CF_2$ group unique."

10      (NX2037, p. 77, l. 22- p. 78, l. 5).   According to Dr. Smith, "the preparation of the

11      starting fluoroformate . . . would be a little arduous." NX2037, p. 80, ll. 1-3.

12    F161   Dr. Harris agreed that formula (Ic) as written in the Kruger patent does not fall within

13      Kruger formula (I).  WX 1025, p. 54, ll. 7-11.

14    F162   Dr. Harris was not willing to concede that Kruger formula (Ic) as it appears in the Kruger

15      patent was a mistake since he believed there was a "possibility that there was some

16      change made between the time the German application was filed and the American or

17      U.S. Patent application was filed." NX 2029, p. 87, ll. 16-19.

18    F163   Dr. Harris also stated that the compounds of formula (Ic) as it appears in the Kruger

19      patent would have been useful to Kruger because they are perfluoro vinyl ethers with the

20      R group or the $R_f$ group containing ether links which would reduce the glass transition

21      temperature of the polymer in which they were incorporated.  WX 1025, p. 160, ll. 2-15.

22    F164   Dr. Harris testified that Worm claim 7 was anticipated by the Kruger patent because

1        Kruger satisfied the Worm claim 7 formula for all values of p=1-4 in Kruger formula

2        (Ic).  NX 2012, ¶ 23.

3    F165   Dr. Harris testified that Worm claim 8 was anticipated by the Kruger patent because

4        Kruger satisfied the Worm claim 8 formula when p=1 in Kruger formula (Ic).  NX 2012,

5        ¶ 24.

6    F166   Dr. Harris testified that the Worm claim 9 compound $CF_2=CFOCF_2O-CF_2CF_3$, was

7        obvious in view of the Kruger patent disclosure of $CF_2=CFOCF_2O-CF_3$ since the

8        compounds are adjacent members of a homologous series.  NX 2012, ¶¶ 25, 26 & 27.

9    F167   Dr. Harris acknowledged that the Kruger patent fails to teach a process for making the

10       compounds of formula (Ic).  WX 1025, p. 65, ll. 14-17.

11   F168   However, Dr. Harris stated that the fact that the Kruger patent does not disclose how to

12       make these compounds did not effect his opinion that Worm claims 7 and 8 are

13       anticipated by and Worm claim 9 is obvious in view of Kruger.  WX 1025, p. 63, l. 24-p.

14       65, l. 8.

15   F169   By way of explanation, Dr. Harris stated "I don't think this patent [Kruger] shows you

16       how to make any of the compounds that are included.  So I don't think it's particularly

17       significant that the synthesis of this compound is not included in the examples."  NX

18       2029, p. 62, ll. 16-20.

19   F170   In any event,  Dr. Harris believed that one of ordinary skill in the art would have been

20       able to make compounds of the Kruger patent formula (Ic) according to the scheme set

21       out in WX 1015.  WX 1025, p. 65, ll. 17-22; p. 66, l. 24-p. 67, l. 4.

22

1    **III. DISCUSSION**[5]

2        The initial count, Count 1, as set out in the NOTICE DECLARING INTERFERENCE

3    (Paper 1) is Worm Claim 7 which reads:

4            A perfluorovinyl ether having the formula $R_fOCF_2OCF{=}CF_2$ wherein $R_f$ is a

5        linear, branched or cyclic perfluorinated aliphatic group that may contain oxygen atoms

6        forming additional ether linkages and that does not contain any sites of terminal

7        unsaturation.    F46 & F47.

8    Both Navarrini and Worm have proposed redefining the interfering subject matter by

9    substituting a new count for Count 1.  Navarrini has contingently proposed adding a second

10    count.

11

12                        **Navarrini Preliminary Motion 2**

13        Navarrini proposes redefining the interfering subject matter by substituting Count A[6] or,

14    in the alternative, Count B[7] for Count 1.  Paper 27.  Navarrini further requests that Worm claims

---

[5]The preliminary motions were filed prior to the effective date of the regulations currently governing interferences. 37 C.F.R. § 41.100, *et seq.*  The current rules apply except where the parties have an interest based on reliance on the former rules.  *Singh v. Brake*, 222 F.3d 1362, 1371, 55 USPQ2d 1673, 1679 (Fed. Cir. 2000).

[6]Navarrini proposed Count A reads:
    A fluorovinyl ether having the formula $CFX{=}CXOCF_2OR_C$ wherein:
1)    $R_C$ is a linear, branched or cyclic perfluorinated aliphatic group that may contain oxygen atoms forming additional ether linkages and that does not contain any sites of terminal unsaturation, and up to two fluorine atoms of the perfluorinated aliphatic group can be replaced with atoms selected from the group consisting of  H, Cl, Br or I; and
2)    X is F or H.
F53.

[7] Navarrini proposed Count B reads:
    A fluorovinyl ether having the formula $CFX{=}CXOCF_2OR_C$ wherein:
1)    $R_C$ is a linear, branched or cyclic perfluorinated aliphatic group that may contain oxygen atoms forming additional ether linkages and that does not contain any sites of terminal unsaturation; and
2)    X is F or H.
F54.

1    7-9 and Navarrini claims 52-57 be designated as corresponding to Proposed Count A or B.

2    F57.  Navarrini Counts A and B are directed to fluorovinyl ethers having the formula:

3    $CFX=CXOCF_2OR_c$.  Navarrini Count A allows for non-fluorine substituents on the carbon

4    atoms of the vinyl group (i.e., X is F or H) and for replacement of up to two fluorine atoms of

5    the perfluorinated aliphatic group ($R_c$) with H, Cl, Br or I.  F55.  In the alternative, Navarrini

6    proposes Count B which is narrower than Count A in that X is limited to H and Count B does

7    not allow for substitution of the fluorine atoms of the perfluorinated aliphatic group ($R_c$).  F56.

8    Navarrini has also moved to add a second count, Count C[8], contingent on a determination that

9    Worm claim 8 does not correspond to Count 1 or Counts A or B.  F93.  It is Navarrini's position

10    that Navarrini claim 56 and Worm claims 8 and 9 should be designated as corresponding to

11    proposed Count C.  F95.

12        According to Navarrini, Count 1 is too narrowly drawn such that the invention of

13    Navarrini claim 52 will be subject to a priority challenge in which its relevant proof of invention

14    will be excluded.  Paper 27, p. 1.  Specifically, Navarrini maintains that Count 1 excludes

15    compounds encompassed by the Navarrini claim 52 formula $CFX=CXOCF_2OR$ when X is H

16    and R has any atoms of H, Cl, Br or I.  Paper 27, pp. 1-2.  Navarrini asserts that working

17    examples of the compounds $CFH=CHOCF_2OCF_2CF_2OCF_3$ and $CFH=CHOCF_2OCF(CF_3)OCF_3$

18    appear in the Navarrini Application and development of these compounds would constitute

19    proof of prior invention of Navarrini claim 52.  Navarrini argues that with current Count 1, all

20    evidence of Navarrini's development of these two compounds would be excluded from the

21    priority contest.  Paper 27, p. 6.

22        In *Louis v. Okada*, 59 USPQ2d 1073, 1076 (Bd. Pat. App. & Int. 2001), the Board

23    explained that any time a party seeks to broaden a count on the basis that its best or earliest

24    proofs are outside of the current count it must, at a minimum, (1) make a proffer of the party's

---

[8] Navarrini proposed Count C is directed to a perfluorovinyl ether of formula $CF_2=CF-O-CF_2O-CF_3$ or $CF_2=CF-O-CF_2O-CF_2CF_3$.  F94.

1    best proofs, (2) show that such best proofs indeed lie outside of the scope of the current count,

2    and (3) further show that the proposed new count is not excessively broad with respect to what

3    the party needs for its best proofs.  The movant must demonstrate "a genuine need to change the

4    count, and not simply cause a change for change's sake."  *Id.*

5         Navarrini has failed to meet the minimum showing required by *Louis* for substitution of

6    Count 1 with either Navarrini Count A or Count B.  Navarrini fails to direct us to supporting

7    evidence that its best proofs lie outside the scope of the current count. For example, Navarrini

8    should have submitted into evidence a declaration, lab notebook page, etc., that would have

9    demonstrated that Navarrini's best proofs are to one of the two compounds Navarrini alleges are

10   excluded by the current count. In addition, Navarrini should have explained why its proposed

11   Count A or Count B is not excessively broad.  The Board will not ordinarily adopt a count that

12   is broader than the current count, especially when the moving party provides no explanation to

13   the contrary.  Navarrini could have met this requirement by demonstrating, for example, that its

14   proposed Count A or Count B are to the same patentable invention as the current count.  Here

15   we have no explanation, and thus no assurance that Navarrini's proposed Count A or Count B, if

16   adopted, would accurately describe the interfering subject matter.

17        Accordingly, Navarrini's request to substitute Count A or, in the alternative, Count B,

18   for Count 1 is denied.

19        Navarrini has contingently moved to add a second count, Count C, if Worm claim 8 is

20   not designated as corresponding to Count A or Count B,  or Count 1.  Having denied Navarrini's

21   request to substitute Count A or Count B, and having denied Worm Preliminary Motion 3

22   requesting that claim 8 be designated as not corresponding to a count of the interference (*see,*

23   *infra,* pp. 35-39), this contingency is not met.

24        Navarrini  Preliminary Motion 2 is  **denied-in-part and dismissed-in-part**.

25

26                              **Navarrini Preliminary Motion 3**

1    Navarrini Preliminary Motion 3 is contingent on our adopting Navarrini proposed count

2    A, B, or C. Having decided not to adopt any of these counts, Navarrini Preliminary Motion 3 is

3    **dismissed** as moot.

4                                   <u>**Worm Preliminary Motion 1**</u>

5    In contrast to Navarrini, Worm seeks to narrow Count 1. The basis for Worm

6    Preliminary Motion 1 is that Count 1 encompasses non-interfering subject matter. According to

7    Worm, its proposed new count defines subject matter that is identically claimed by both Worm

8    and Navarrini. Worm's Count is identically worded to claim 9 of the Worm '536 patent. F58 &

9    F59. Thus, Worm's Count is directed to a single compound: $CF_3CF_2OCF_2OCF=CF_2$. F60.

10   This compound is also the subject of Navarrini claim 56. F61. Worm maintains that Navarrini

11   claims 52-57 and Worm claims 7 and 9 should be designated as corresponding to Worm's

12   Count. F62. Worm states that Worm claim 8 does not correspond to the Worm Count, but does

13   not indicate why. *Id.*

14   A count is the Board's description of the interfering subject matter and the vehicle for

15   determining priority of invention. Bd. R. 201. The count must embrace the parties' common

16   patentable subject matter in order to determine priority. *See Squires v. Corbett*, 560 F.2d 424,

17   433, 194 USPQ 513, 519 (CCPA 1977). The burden is on Worm to rebut the presumption that

18   Count 1 properly defines the interfering subject matter. Bd. R. 121(b). *See Velander v. Garner*,

19   348 F.3d 1359, 1369-70, 68 USPQ2d 1769, 1777 (Fed. Cir. 2003).

20   According to Worm, Worm claim 7 includes compounds which are not encompassed by

21   any of Navarrini claims 52-57 and Navarrini claim 52 encompasses compounds which do not

22   overlap with any of Worm claims 7-9. Paper 32, pp. 5-6. Worm relies on Dr. Winkler's

23   testimony that Navarrini claims 52-57 do not encompass the Worm claim 7 compounds in

24   which the $R_f$ substituent is $CF_3$, a cyclic perfluoroalkyl group comprising seven or more carbon

25   atoms, and a linear or branched perfluorooxyalkyl group comprising seven or more carbon

26   atoms and/or four oxygen atoms. F26. Dr. Winkler further stated that Worm claims 7-9 do not

encompass the Navarrini claim 52 compounds having the formula $CFX=CXOCF_2OR$ wherein R

is a perfluoroalkyl group or a perfluorooxyalkyl group in which one or two of the fluorine atoms

are replaced with H, Cl, Br or I and also wherein X is H. *Id.*

     Worm's argument that the scope of the count should be limited to the parties' identically

claimed subject matter is without merit. An interference exists when at least one claim of a

party would, if prior art, have anticipated or rendered obvious the subject matter of a claim of

the opposing party and vice versa. Bd. R. 203(a). *See Aelony v. Arni,* 547 F.2d 566, 570, 192

USPQ 486, 490 (CCPA 1977))("[T]he test of interference in fact is not whether two sets of

claims overlap, but whether they are patentably distinct from each other."). Under Bd. R.

208(b), the burden is on Worm to show that Worm claims 7-9 are not the same as or obvious in

view of Navarrini claim 52, assuming this claim is prior art with respect to Worm's claims, and

that Navarrini claims 52-57 are not the same as or obvious in view of Worm claim 7, assuming

this claim is prior art with respect to Navarrini's claims. Merely arguing that each party has a

claim that encompasses compounds not within the scope of the other party's claims does not

prove patentable distinctiveness. Thus, Worm has failed to sufficiently demonstrate that Count

1 does not properly define the interfering subject matter.

     Since Worm has failed to sustain its burden of proof, we need not consider Navarrini's

Opposition 1 or Worm's Reply 1. Worm Preliminary Motion 1 is **denied**.

### Worm Preliminary Motion 3

     Worm Preliminary Motion 3, contingent on the denial of Worm Preliminary Motion 1,

requests that the interfering subject matter be redefined by undesignating Worm claim 8 as

corresponding to Count 1. Count 1 is identically worded to Worm claim 7 which reads: "A

perfluorovinyl ether having the formula $R_fOCF_2OCF=CF_2$[9] wherein: $R_f$ is a linear, branched or

---

[9]This formula is also expressed in the record as $CF_2=CFOCF_2OR_f$.

1    cyclic perfluorinated aliphatic group that may contain oxygen atoms forming additional ether

2    linkages and that does not contain any sites of terminal unsaturation." F49 & F50. Worm claim

3    8 is directed to a species within the genus of the Worm claim 7 formula wherein $R_f$ is $CF_3$, i.e.

4    the compound $CF_2=CFOCF_2OCF_3$. F63 & F64. Worm claim 9 is also directed to a species

5    within the genus of the Worm claim 7 formula wherein $R_f$ is $CF_2CF_3$, i.e. the compound

6    $CF_2=CFOCF_2OCF_2CF_3$. F59 & F60. Worm does not challenge the designation of Worm claim

7    9 as corresponding to Count 1.

8           A party moving to undesignate a claim from corresponding to the count must

9    demonstrate that the count does not anticipate or render obvious the subject matter of the claim.

10    Bd. R. 207(b)(2). Worm argues that the mere fact that a prior art genus encompasses a claimed

11    species is not alone sufficient to establish a prima facie case of obviousness. *In re Baird*, 16

12    F.3d 380, 382, 29 USPQ2d 1550, 1552 (Fed. Cir. 1994); *In re Jones*, 958 F.2d 347, 350, 21

13    USPQ2d 1941, 1943 (Fed. Cir. 1992). Worm maintains that obviousness cannot be established

14    absent some motivation or suggestion in the prior art to select the species from the compounds

15    encompassed by the genus. According to Worm, Worm claim 7 embraces an unlimited number

16    of species and one of ordinary skill in the art would not have been motivated to select the Worm

17    claim 8 compound from these unlimited number of compounds encompassed by Worm claim 7.

18           Worm relies on the testimony of Dr. Winkler in support of its motion. Dr. Winkler

19    testified as follows:

20           The general formula of Claim 7 of the '536 patent embraces an unlimited
21    number of compounds.
22                                              * * *
23           It is . . . my opinion that one of ordinary skill in the chemical arts would
24    not be motivated to select the particular compound defined by Claim 8 given the
25    general formula of Claim 7 which encompasses an unlimited number of
26    compounds.
27           In particular, I am aware of no published documents which were available
28    as of December 1999 which would have suggested to one of ordinary skill in the
29    chemical arts, given the general formula of Claim 7, to select the particular
30    compound defined by Claim 8 from among the compounds defined by that general
31    formula.
32           It is also my opinion that the level of skill in the chemical arts as of

1        December 1999 was such that one of ordinary skill in the chemical arts, given the
2        general formula of Claim 7 of the '536 patent, would not have been motivated to
3        select the particular compound defined by Claim 8 of the '536 patent from among
4        the compounds defined by that general formula absent a teaching or suggestion in
5        a published document.
6

7   F67 & 68  (WX 1011, ¶¶ 18 & 23-25).

8        The initial presumption is that claims have been properly designated as corresponding to

9 the count and are, therefore, anticipated by or obvious in view of the subject matter of the count.

10 Because a party moving to undesignate a claim must establish a "negative," i.e., that there is no

11 prior art which, when combined with the count, would render the claim obvious, we are willing

12 to accept proofs based on a lesser evidentiary basis.  Thus, for example, the testimony of a person

13 skilled in the relevant art stating that he is unaware of any prior art that would teach or suggest

14 modifying the invention of the count to achieve the invention of the claim at issue might be

15 sufficient to satisfy the movant's burden. *Cf. In re Harris,* 409 F.3d 1339,1343, 74 USPQ2d

16 1951, 1954 (Fed. Cir. 2005) (quoting *In re Dillon,* 919 F.2d 688, 692-93, 16 USPQ2d 1897, 1901

17 (Fed.Cir.1990) (en banc))("When the PTO shows prima facie obviousness, the burden then shifts

18 to the applicant to rebut. . . . Rebuttal may take the form of 'a comparison of test data showing

19 that the claimed compositions possess unexpectedly improved properties ... that the prior art does

20 not have, that the prior art is so deficient that there is no motivation to make what might

21 otherwise appear to be obvious changes, or any other argument ... that is pertinent.").

22        Although Worm does not challenge the designation of Worm claim 9 as corresponding to

23 Count 1,we view the close structural relationship between the Worm claim 8 and Worm claim 9

24 compounds (*see* F65 & F66) as placing a burden on Worm to explain why one of ordinary skill in

25 the art in December 1999 would have been motivated to select $CF_2CF_3$ as the $R_f$ group in the

26 formula of Count 1 to obtain the Worm claim 9 compound $CF_2=CFOCF_2OCF_2CF_3$, but would

27 not have been similarly motivated to select the simplest member of the $R_f$ group, $CF_3$, to obtain

28 the adjacent homolog $CF_2=CFOCF_2OCF_3$, i.e., the Worm claim 8 compound.  *See Capon v.*

29 *Eshhar,* 418 F.3d 1349, 1357, 76 U.S.P.Q.2d 1078, 1084 (Fed. Cir. 2005) ("Since the law is

1  applied to each invention in view of the state of relevant knowledge, its application will vary

2  with differences in the state of knowledge in the field and differences in the predictability of the

3  science."). The only evidence purportedly comparing these two compounds is a general

4  statement by Dr. Winkler that "Claim 9 . . . defines a compound that is different and distinct from

5  that defined by Claim 8." F69 (WX 1011, ¶ 9).

6      An obviousness determination must be made from the perspective of a hypothetical

7  person of ordinary skill in the art at the time the invention was made and this person is presumed

8  to have knowledge of all the pertinent prior art. Thus, the party moving to undesignate a claim

9  must provide some evidentiary basis for considering the obviousness of the invention in light of

10  the scope and content of the prior art and the level of ordinary skill in the prior art. Dr. Winkler

11  does not discuss the state of the prior art or the knowledge and skills of one of ordinary skill in

12  the art with any degree of specificity. *See* F44 & F46. He does not tell us why a "published

13  document" would have been necessary to motivate one of ordinary skill in the art to select the

14  Worm claim 8 compound, nor does he explain what he means by the term "published document."

15  F72. When asked on cross-examination during his deposition whether he took into account the

16  fact that patent disclosures could be prior art as of the filing dates, Dr. Winkler stated "I don't

17  remember doing that." F73 (NX 2021, p. 158, l. 19 - p. 159, l. 4).

18      "To be sufficient, a motion must provide a showing, supported with appropriate

19  evidence, such that, if unrebutted, it would justify the relief sought." Bd. R. 208(b). We give

20  little weight to Dr. Winkler's testimony, since he does not disclose the underlying facts or data on

21  which his opinion is based. *See* Bd. R. 158(a). As Worm relies solely on Dr. Winkler's

22  testimony in support of its motion, Worm has not provided us with sufficient evidentiary basis to

23  conclude that Worm claim 8 would not have been obvious to one of ordinary skill in the art,

24  given Count 1 (Worm claim 7) as prior art in combination with any other pertinent prior art. *Cf.*

25  *In re Soni*, 54 F.3d 746, 750, 34 USPQ2d 1684, 1687 (Fed.Cir.1995) (an applicant must offer

1    more than "mere argument or conclusory statements " to overcome *prima facie* obviousness).

2    Worm Preliminary Motion 3 is **denied**. [10]

3    ## Navarrini Preliminary Motion 1

4    In Navarrini Preliminary Motion 1, Navarrini moves for judgment that Worm claims 7-9

5    are unpatentable under 35 U.S.C. §§ 102 & 103 over U.S. Patent No. 5,696,216 to Kruger, PCT

6    Publication WO 99/48939 to Grootaert and U.S. Patent No. 6,294,627 to Worm and

7    Veretennikov.

8    In an interference proceeding, the preponderance of the evidence standard is used for

9    patentability challenges. *Bruning v. Hirose,* 161 F.3d 681, 685-86, 48 USPQ2d 1934, 1937 (Fed.

10    Cir. 1998). Under the preponderance of the evidence standard, the trier of fact must "believe that

11    the existence of a fact is more probable than its nonexistence before [he] may find in favor of the

12    party who has the burden to persuade the [judge] of the fact's existence." *Velander v. Garner,*

13    348 F.3d at 1370, 68 USPQ2d at 1777 (citations omitted). The burden is on the moving party to

14    establish that it is *prima facie* entitled to the requested relief. Bd. R. 121.

15    To establish anticipation, it must be shown that a single prior art reference discloses each

16    and every feature recited in the claim. All of the claimed elements must be found within the four

17    corners of that single reference, either expressly or inherently, as it is *understood* by a person of

---

[10] As an additional matter, we note that Worm improperly argues in its reply brief that the claim 8 compound is nonobvious because the prior art does not enable its preparation. Paper 72, p. 3.The appropriate time for Worm to have made its non-enablement argument was in its moving brief. *See* Bd. R. 122 (b) ("all arguments for the relief requested in a motion must be made in the motion. A reply may only respond to arguments raised in the corresponding opposition.") Worm's argument, in effect, seeks to shift the burden to Navarrini to allege and prove facts which are necessary to establish the opposite of what Worm needs to show for entitlement to relief.
As the Board stated in its precedential decision of *LeVeen v. Edwards,* 57 USPQ2d 1406, 1414 (Bd. Pat. App. & Int. 2000): "There is no place in interference practice for a party to require an opponent to (1) search the motion and evidence, (2) set out in an opposition the facts the opponent may believe that the party must prove to make out its case and (3) admit or deny those facts."

1    ordinary skill in the art. *See Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d

2    1565, 1576-77, 18 USPQ2d 1001, 1010 (Fed. Cir. 1991). The person of ordinary skill in the art

3    is a hypothetical person who is presumed to have the skill and experience of only an ordinary

4    worker in the field, but knowledge of everything known in the art. *See Custom Accessories,* 807

5    F.2d at 962 , 1 USPQ2d at 1201.

6                                                    **Kruger**

7            Kruger "relates to peroxide crosslinkable fluororubbers prepared from polymerized units

8    of vinylidene fluoride, at least one fluorinated propene and/or a fluorinated methyl vinyl ether, at

9    least one perfluoro(polyoxaalkyl vinyl ether), optionally tetrafluoroethylene, and crosslinking-

10   active reactive sites, to a process for the production thereof and to the use thereof." F134 (NX

11   2002, col. 1, ll. 6-12). The perfluoro(polyoxaalkyl vinyl ethers) of the invention are compounds

12   of the formula (I): $CF_2=CF-O-R_F$, wherein

13           $R_F$ = -$(CF_2)_m$(-O-$CF_2$)$_n$-O-$CF_3$ where m=3 and n=0 or m=2 and n=1-4, wherein the

14           combinations m=2 and n=1-4 and m=3 and n=0 is preferred, or wherein $R_F$ = -($CF_2$-$CF_2$-

15           O)$_p$-$C_qF_{2q+1}$ where p=1-4 and q=1 or 2, preferably p=1-4 and q=1. F135 (NX 2002, claim

16           1).

17   The compounds of formula (Ic) as this formula appears in the Kruger patent and PCT application

18   are:

19           $CF_2=CF-O-CF_2O-CF_3$                                                      p=1
20           $CF_2=CF-O-CF_2O-CF_2O-CF_3$                                               p=2
21           $CF_2=CF-O-CF_2O-CF_2O-CF_2O-CF_3$                                        p=3
22           $CF_2=CF-O-CF_2O-CF_2O-CF_2O-CF_2O-CF_3$                                 p=4
23
24   F137 (WX 1034, p. 18, l. 12-p. 19, l. 8 (NX 2030)).

1    According to Navarrini, Kruger anticipates Worm claims 7 and 8. In support of its

2    motion, Navarrini relies on Dr. Harris' testimony. Dr. Harris testified that Kruger satisfies the

3    Worm claim 7 formula $CF_2=CF-O-CF_2-O-R_f$ where $R_f=(CF_2O)_{p-1}CF_3$ for all values of p=1-4 in

4    Kruger formula (Ic) and satisfies the Worm claim 8 formula when p=1 in Kruger formula (Ic).[11]

5    F164 & F165 (NX 2012, ¶¶ 23 & 24). We find that, on its face, Kruger discloses compounds

6    that anticipate Worm claims 7 and 8.

7    Worm concedes that the formula $CF_2=CF-O-(CF_2O)_p-CF_3$ where p=1-4 appears in the

8    Kruger patent. However, Worm maintains that Kruger does not anticipate claims 7 and 8 within

9    the meaning of 35 U.S.C. § 102 because Kruger does not contain an enabling disclosure of

10    compounds having formula (Ic). *See* Paper 55, p. 19.

11    In *In re Elsner,* 381 F.3d 1125, 1128, 72 USPQ2d 1038, 1041 (Fed. Cir. 2004), the court

12    explained that a §102 reference must describe the claimed invention to a sufficient degree that

13    the public is placed in possession of it. "Even if the claimed invention is disclosed in a printed

14    publication, that disclosure will not suffice as prior art if it was not enabling." *In re Donohue,*

15    766 F.2d 531, 533, 226 USPQ 619, 621 (Fed. Cir. 1985) (citing *In re Borst,* 345 F.2d 851, 855,

16    145 USPQ 554, 557 (CCPA 1965) ("the disclosure must be such as will give possession of the

17    invention to the person of ordinary skill")). The proper test is whether one of ordinary skill could

18    take the disclosure and combine it with his own knowledge of the art and, from this combination,

19    be put in possession of the invention.

---

[11]Worm claim 9, directed to the compound $CF_2=CFOCF_2O-CF_2CF_3$, is said to be *prima facie* obvious in view of the compound of Kruger formula (Ic) where p=1 (i.e., $CF_2=CFOCF_2O-CF_3$) since the compounds are adjacent members of a homologous series. Paper 26, p. 18; F166 (NX 2012, ¶¶ 25, 26 & 27).

1      The enablement requirement is set forth in the first paragraph of 35 U.S.C. § 112 and

2    requires that: "[t]he specification shall contain a written description of the invention, and of the

3    manner and process of making and using it, in such full, clear, concise, and exact terms as to

4    enable any person skilled in the art to which it pertains . . . to make and use the same. . . ." The

5    Section 112 enablement requirement is fulfilled where one possessed of the knowledge had by

6    one skilled in the art could use the invention given the specification disclosure without undue

7    experimentation. *See Atlas Powder Co. v. E.I. du Pont De Nemours & Co.,* 750 F.2d 1569, 1576,

8    224 USPQ 409, 414 (Fed. Cir. 1984) (the fact that some experimentation is necessary does not

9    preclude enablement). Evidence, such as patents and publications, may be used to show the

10    knowledge possessed by those skilled in the art and thereby establish that a given specification

11    disclosure is enabling. *In re Eynde,* 480 F.2d 1364, 1370, 178 USPQ 470, 474 (CCPA 1973).

12      Patents are presumptively enabled. *Amgen v. Hoechst,* 314 F.3d 1313, 1355, 65 USPQ2d

13    1385, 1416 (Fed. Cir. 2003). Therefore, the burden is on Worm to establish that Kruger does not

14    contain an enabling disclosure of the formula $CF_2=CF-O-(CF_2O)_p-CF_3$ where p=1-4. *See* Bd. R.

15    121(b). According to Worm, formula (Ic) as it appears in the Kruger patent

16    $(CF_2=CF-O-(CF_2O)_p-CF_3)$ is most likely the result of a typographical error. Worm maintains that

17    a $CF_2$ group was inadvertently omitted from the repeating unit $(CF_2CF_2O)_p$ in formula (Ic) of the

18    Kruger German priority document (WX 1016 & translation WX 1017), which identifies formula

19    (Ic) as: $CF_2=CF-O-(CF_2CF_2O)_p-CF_3$. Worm believes that it is this formula which should have

20    appeared in the Kruger application and patent as formula (Ic). Worm maintains that one of

21    ordinary skill in the art would recognize that formula (Ic) of the Kruger patent contains an error.

1    Paper 55, p. 10. Worm cites *In re Yale*, 434 F.2d 666, 668-69, 168 USPQ 46, 49 (CCPA 1970)

2    for the proposition that "[t]he listing of a compound in a reference publication which is an

3    obvious error to one of ordinary skill in the art does not put the public in possession of the listed

4    compound." Paper 55, p. 11.

5      In support of its position, Worm relies on the testimony of Dr. Smith. Dr. Smith testified

6    that the four subsets of compounds available under Kruger formula (I) are:

7        $CF_2=CF-O-CF_2CF_2CF_2-O-CF_3$ where m=3 and with n=0    (Ia)
8        $CF_2=CF-O-CF_2CF_2-(O-CF_2)_{1-4}-OCF_3$ where n=1-4 and with m=2   (Ib)
9        $CF_2=CF-O-(CF_2-CF_2-O-)_{1-4}-CF_3$ where p=1-4 and with q=1   (Ic)
10        $CF_2=CF-O-(CF_2CF_2-O-)_{1-4}-CF_2CF_3$ where p=1-4 and with q=2   (Id)

11

12    F155 (WX 1024, ¶ 17). According to Dr. Smith, using Kruger's definitions of $R_f$ and subscripts

13    m, n, p and q, Kruger formula (I) requires at least one of the following substructures:

14        $CF_2=CF-O-CF_2CF_2CF_2-O$ or $CF_2=CF-O-CF_2CF_2-O$

15    F156 (WX 1024, ¶ 20). Dr. Smith testified that Kruger's use of the subscript "p" in formula (Ic)

16    would lead one of ordinary skill in the art to recognize the error in Kruger formula (Ic) and

17    substitute the divalent radical $(CF_2CF_2O)_p$ from Kruger formula (I) for the $(CF_2O)_p$ in formula

18    (Ic) to arrive at the correct formula. F157 (WX 1024, ¶ 23). Dr. Smith testified that he believes

19    that Kruger's intended formula (Ic) is shown in Example 2 of the Kruger patent. F153 (WX

20    1034, p. 33, ll. 5-9). Thus, Worm maintains that one of ordinary skill in the art would mentally

21    disregard formula (Ic) as shown in the Kruger patent $(CF_2=CF-O-(CF_2O)_p-CF_3)$ and mentally

22    substitute the correct formula $(CF_2=CF-O-(CF_2-CF_2-O-)_p-CF_3)$ in its place. Paper 55, p. 11.

23      Dr. Smith further testified that a person of ordinary skill in the art would not have been

24    able to make or use a compound having formula (Ic) as it appears in the Kruger patent. F158

1    (WX 1024, ¶¶ 25 & 27).  According to Dr. Smith, neither the Kruger patent nor any of the

2    references cited therein teach how to make a compound with a -$CF_2$=CF-O-($CF_2$O)- group and

3    one of ordinary skill in the art would not have had sufficient skills or knowledge to make the

4    compound of formula (Ic) using the Kruger patent disclosure.   F159 (NX 2037, p. 46, l. 19-p. 47,

5    l. 19).  According to Dr. Smith "[t]here's something very unique about an isolated $CF_2$ group

6    between two oxygens."  F160 (NX2037, p. 77, ll. 8-9).  Dr. Smith testified that the synthesis of

7    an -O-$CF_2$O-$CF_3$- group would be more difficult than the synthesis of an -O-$CF_2CF_2$O-$CF_3$-

8    group.  F160 (NX2037, p. 77, ll. 15-18).  Dr. Smith explained that one "would have to start with

9    an acid fluoride that was what we call a fluoroformate.  So it would have to have another oxygen

10   unit there, and those are known but less predictable, I would say and more reactive definitely.

11   And so that's what makes the lone $CF_2$ group unique." F160 (NX2037, p. 77, l. 22- p. 78, l. 5).

12   Dr. Smith further testified that "the preparation of the starting fluoroformate . . . would be a little

13   arduous."  F160 (NX2037, p. 80, ll. 1-3).  We find this testimony credible in establishing that

14   undue experimentation by one of ordinary skill in the art would have been required to make

15   compounds having a -$CF_2$=CF-O-($CF_2$O)- group , given the disclosure of Kruger.

16        We find Dr. Smith's testimony credible and persuasive in overcoming the presumption

17   that the Kruger patent enables the formula where p=1-4.

18        Navarrini attempts to discredit Dr. Smith's testimony by arguing that Dr. Smith was

19   aware of a  technique for synthesizing vinyl ethers using acid fluoride chemistry which could be

20   used to produce compounds with a $CF_2$=CFOCF$_2$O- group including the compound of Worm

21   claim 8 ($CF_2$=CFOCF$_2$O$CF_3$).  Paper 92, p. 9.  Navarrini suggests that the burden is on Worm to

1    show that this technique could not be used to produce the formula (Ic) compounds. In our view,

2    Navarrini mischaracterizes Dr. Smith's testimony and misapprehends the burden of proof. Under

3    cross-examination at his deposition, Dr. Smith illustrated a technique (NX 2033) for synthesizing

4    vinyl ethers. F87 (NX 2037, pp. 66-72). He did not testify that one of ordinary skill in the art

5    would have known of or used this technique for synthesis of the Kruger formula (Ic) compounds.

6    Although Dr. Smith stated that he did not have any reason to believe that this chemistry would

7    not work for synthesis of $CF_2$=$CFOCF_2OCF_3$ (WX 1034, p. 80), he also stated that he would not

8    expect this chemistry to be used for synthesis of the Kruger formula (Ic) compounds due to

9    difficulties in preparing the starting fluoroformate. F91 (WX 1034, p. 79 - p. 80, l. 10). *See*

10   *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 1207, 18 USPQ2d 1016, 1022 (Fed.

11   Cir. 1991) (It must be shown that one having ordinary skill in the art would reasonably have

12   expected any proposed changes to a prior art reference would have been successful.)

13         Navarrini also relies on Dr. Harris' testimony to establish that one of ordinary skill in the

14   art would have been able to make compounds of formula (Ic) of the Kruger patent. Dr. Harris

15   agreed with Dr. Smith that formula (Ic) as written in the Kruger patent does not fall within

16   Kruger formula (I) (WX 1025, p. 54, ll. 7-11) and that the Kruger patent fails to teach a process

17   for making the compounds of formula (Ic) (WX 1025, p. 65, ll. 14-17). F161 & F167.

18   However, Dr. Harris maintains that one of ordinary skill in the art as of January 1, 2000, would

19   have been able to make compounds of formula (Ic) using the following synthetic scheme:

20         $FOCF_2OCF_3 + CFCl=CFCl \rightarrow ClCF_2ClCFOCF_2OCF_3 \xrightarrow{Zn} CF_2=CFOCF_2OCF_3.$

21   F78 (NX 2029, p. 66, l. 24-p. 67, l. 4; WX 1015). Dr. Harris testified that he was aware of a

1      1990 Japanese patent publication disclosing a synthetic scheme which could have been modified

2      to achieve the aforementioned synthesis. F79 (NX 2029, p. 100, l. 18-p. 101, l. 20). Dr. Harris

3      further stated that one of ordinary skill in the art would have known how to make these

4      modifications. F80 (NX 2029, p. 102, l. 20-p. 103, l. 15).     However, Dr. Harris did not

5      remember sufficient details for the publication to be identified. F82 (NX 2029, p. 101, ll. 21-

6      24). Moreover, the record does not include a copy of the 1990 Japanese publication. F83. As

7      noted by Worm, Dr. Harris does not specify what reaction conditions would be required to

8      implement his proposed scheme. *See* Paper 94, p. 6. We find that Dr. Harris' testimony lacks

9      credibility because we have no way of assessing whether the person of ordinary skill in the art

10     would have had the skills and knowledge to have made modifications to a known process to

11     obtain the compound of Worm claim 8. Finally, Navarrini has failed to direct us to evidence

12     which demonstrates that the starting material, $FOCF_2OCF_3$, is a known compound. *See* F85. We

13     conclude that Navarrini has failed to direct our attention to evidence which sufficiently

14     establishes that the level of ordinary skill in the art was such that Dr. Harris' proposed scheme

15     would have been conceived and successfully implemented.

16            On weighing the evidence and arguments presented by both parties, we find that Worm

17     has rebutted the presumption of enablement of Kruger formula I(c). In conclusion, we hold that

18     Navarrini has failed to establish that Worm claims 7-9 are unpatentable over Kruger.

19                                                **Grootaert '939**

20            Navarrini maintains that Worm claim 7 is anticipated by Grootaert '939 under 35 U.S.C.

1    § 102(a).[12] According to Navarrini, Grootaert '939 discloses a species,

2    $CF_2=CFOCF_2OCF_2CF_2CF_3$, of the genus defined by the Worm claim 7 formula.  Navarrini argues

3    that disclosure of a species constitutes an anticipation of the genus.  *Eli Lilly and Co. v. Barr*

4    *Labs, Inc.*, 251 F.3d 955, 971, 58 USPQ2d 1869, 1880 (Fed. Cir. 2001).  Navarrini relies on the

5    testimony of Dr. Harris that the Grootaert '939 formula $CF_2=CFOCF_2OCF_2CF_2CF_3$ satisfies the

6    Worm claim 7 formula for $R_f=CF_2CF_2CF_3$.  F148 (NX 2012, ¶ 32).

7    Navarrini argues that Worm claims 8 and 9 are *prima facie* obvious in view of Grootaert

8    '939.  Navarrini relies on Dr. Harris' testimony that Grootaert '939 suggests Worm claims 8 and

9    9 because the Grootaert '939 compound ($CF_2=CFOCF_2OCF_2CF_2CF_3$), Worm claim 9 compound

10    ($CF_2=CFOCF_2OCF_2CF_3$) and Worm claim 8 compound ($CF_2=CFOCF_2OCF_3$) are adjacent

11    members of a homologous series.  F149 (NX 2012, ¶ 34).  Dr. Harris stated that, as adjacent

12    homologues, these compounds  would have been expected to have similar properties.  *See* F75

13    (NX 2012, ¶ 67).  We find Dr. Harris' testimony credible and sufficient to establish a *prima*

14    *facie* case of unpatentability.

15    Worm does not argue the merits of Navarrini Preliminary Motion 1 as to Grootaert '939.

16    Worm  maintains that Allan Worm and George Moore are the only inventors of the subject

17    matter of Worm claims 7-9, although the named inventors of Worm's involved patent are Allan

18    T. Worm, George G. I. Moore, Miguel A. Guerra, Werner Schwertfeger, Klaus Hintzer,

19    Zai-Ming Qiu and Erik D. Hare.  Thus, Worm's opposition is limited to its assertion that

20    Grootaert '939 is not available as prior art against Worm '536 since the relied-upon portions are

21    not the invention of "another."

22    Worm relies on the testimonies of George Moore and Werner Grootaert to establish that

---

[12] 35 U.S.C. § 102(a) provides that "[a] person shall be entitled to a patent unless . . . the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent."  An "applicant for patent" is the inventor or inventors. 37 C.F.R. §1.41(a).

1    Moore invented the compound $CF_2=CF-O-CF_2O-CF_2CF_2CF_3$.  In the pertinent portion of George

2    Moore's declaration testimony, he states:

3        Based on our discussions, I am of the belief that Alan T. Worm first
4        identified the general formula of perfluorinated ethers set forth at page 4, lines 20-
5        28 of the '574 publication.  In response to these discussions of such monomers, I
6        identified the class $CF_2=CFO-CF_2-O-R_f{}^1$, that results when m is 1 and n is 0, and
7        which includes the compound $CF_2=CF-O-CF_2O-CF_2CF_3$, where $R_f{}^1$ is $-CF_2CF_3$, as
8        a class which our existing fluorination technology might produce, and we agreed
9        upon this type as an initial goal.
10
11   F124 (WX 1007, ¶ 4).

12   In Werner Grootaert's declaration, he states:

13        At page 5, line 8 of the '939 publication a useful perfluorovinyl ether is
14        identified according to the chemical formula $CF_2=CF-O-CF_2O-CF_2CF_2CF_3$.
15        George Moore specifically suggested this perfluorovinyl ether, with which he was
16        familiar, as potentially useful in this subject matter of the '939 publication.
17        Accordingly, I am not the inventor of that particular perfluorovinyl ether.

18   F127 (WX 1009, ¶¶ 5 & 6).

19       An inventor's testimonial assertions of inventive facts require corroboration by

20   independent evidence.  *Brown v. Barbacid*, 276 F.3d 1327, 1335,  61 U.S.P.Q.2d 1236, 1240

21   (Fed. Cir. 2002). George Moore is an inventor for Worm.  His testimony as to what he invented

22   is not corroborated, so we do not credit it.  His testimony as to what Alan Worm (another

23   inventor for Worm) invented is not substantiated by independent evidence.  As such, it is at best

24   hearsay, unsupported by independent evidence.  Again, we decline to credit Moore's testimony.

25   As for Grootaert, although he is not an inventor in this interference, and therefore his testimony

26   does not need to be corroborated to guard against an inventor's possible self-interest, his

27   testimony as to what Moore contributed to Grootaert's invention is hearsay.  Grootaert does not

28   testify as to matters of which he has personal knowledge.  Rather, Grootaert's knowledge of any

29   inventive activity by Moore appears to be limited to information that Moore related to him.

30   Grootaert's testimony does not establish that Grootaert had any independent knowledge of

31   Moore's alleged inventorship of the compound $CF_2=CF-O-CF_2O-CF_2CF_2CF_3$.  Moreover,

1    Grootaert has not supported his testimony with independent evidence that might elevate his

2    testimony above hearsay.  Again, we find no basis to credit his testimony as to who invented

3    what in the present case. We find that Grootaert's testimony fails to provide sufficient

4    corroborating evidence of Moore's alleged inventorship.  To the extent that Grootaert's

5    testimony is offered as evidence of Moore's invention, it is inadmissable hearsay.  *See* Bd. R.

6    152(a); Fed. R. Evid. 802.

7        In the absence of any opposition by Worm to rebut Dr. Harris' testimony, we find that

8    Navarrini has established that Worm claim 7 is anticipated by Grootaert '939 under 35 U.S.C. §

9    102(a).  We further find that Navarrini has made a *prima facie* showing of unpatentability of

10   Worm claims 8 and 9 over Grootaert '939 under 35 U.S.C. § 103(c). Accordingly, we find that

11   Worm has failed to overcome Navarrini's *prima facie* showing that Grootaert '939 is available as

12   prior art against the Worm '536 patent.

13                                    **WV '627**

14       Navarrini maintains that Worm claim 7 is anticipated by WV '627  under 35 U.S.C. §

15   102(e)[13].  WV '627 discloses perfluorinated vinyl ether compounds having the general formula I:

16       $CF_2=CFO-(CF_2)_m-(O(CF_2)_p)_m OR_f^1$ wherein $R_f^1$ is a perfluorinated $(C_1-C_4)$ alkyl group; m

17       = 1-2; n = 0-6; and p=1-2.  F119 (WV '627 patent, col. 14, l. 56).

18   Navarrini relies on the testimony of Dr. Harris that claim 7 reads on every compound of WV

---

[13]35 U.S.C. § 102(e) provides that "[a] person shall be entitled to a patent unless . . . the invention was described in . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent. 35 U.S.C. § 102(e) (2000). Under a 1999 amendment to 35 U.S.C. § 103(c), subject matter which qualifies as prior art only under section 102(e) cannot preclude patentability under section 103 where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person. The amendment to section 103(c) does not apply to this interference since it only affects patents issuing from applications filed on or after the November 29, 1999 effective date. *See* American Inventors Protection Act, Pub.L. 106-113, 113 Stat. 1536, 1501A-591 (1999).

1    '627 general formula I when m=1.[14]  F151 (NX 2012, ¶ 43).

2    As with Grootaert '939, Worm takes the position that WV '627 is unavailable as prior art

3    under Section 102 because the relied upon disclosure in WV '627 is the work of the same

4    inventive entity as the Worm '536 patent.  WV '627 names four inventors (Allan T. Worm,

5    Nikolai Vladimirovich Veretennikov, Margarita Alekseevna Volkova, and Sergey Vasilievich

6    Sokolov).  F116.  According to Worm, only one of the named inventors, Allan Worm, invented

7    the subject matter defined by general formula I of WV '627.

8    In support of its position regarding WV '627, Worm relies on the testimony of Dr.

9    Moore.  Dr. Moore testified that Worm was the first person to show him the structure and

10   identify the objective of making the compounds of general formula I of WV '627.  F105 &

11   F106.  However, Dr. Moore could not confirm that Worm was the actual inventor of the formula

12   as opposed to having obtained the formula from another individual.  F106 (WX 1029, p. 52, ll.

13   10-15 and p. 54, l. 6-p. 55, l. 15).  Moore's testimony as to Worm's statements constitutes

14   unacceptable hearsay evidence.

15   Accordingly, we find that Worm has failed to sustain its burden of establishing that Allan

16   Worm is the sole inventor of the subject matter defined by general formula I of WV '627 and,

17   therefore, the WV '627 patent is available as prior art against the Worm '536 patent.

18   In the absence of any opposition by Worm to rebut Dr. Harris testimony, we find that

19   Navarrini has established that Worm claim 7 is anticipated by WV '627 under 35 U.S.C. §

20   102(e).[15]

---

[14]Dr. Harris testified that general formula I of the WV '627 patent, where m=1, may be rewritten in the format of Worm claim 7 as follows:
   $CF_2=CFOCF_2O-R_f$ where $R_f=(R_f^1$ (when n=0) and $(CF_2)_p(O(CF_2)_p)_{n-1}OR_f^1$ (when n=1-6)), where $R_f^1$ is a perfluorinated $(C_1-C_4)$ alkyl group and p=1-2.  F150 (NX 2012, ¶ 43).

[15] Navarrini also maintains that Grootaert '939 and WV '627 qualify as prior art under 35 U.S.C. § 102(g). Having found Worm claims 7-9 unpatentable, we need not reach the issue of whether these claims are also unpatentable under § 102(g).  Moreover, Worm's assertion that Grootaert and Moore worked for the same company

1    Navarrini Preliminary Motion 1 is **granted**.

2    *Navarrini Claims 52-57*

3    When a motion for judgment of unpatentability against an opponent's
4    claim on the basis of prior art is granted, each of the movant's claims
5    corresponding to the same count as the opponent's claim will be presumed to be
6    unpatentable in view of the same prior art unless the movant in its motion rebuts
7    this presumption.
8
9    Bd. R. 207(c).

10    Our conclusion that Worm claims 7-9 are unpatentable over these references, coupled

11    with Navarrini's omission of any explanation in its moving brief (Paper 26) as to why the

12    teachings of Grootaert '939 and WV '627 do not render Navarrini claims 52-57 unpatentable,

13    would normally trigger the presumption under Bd. R. 207(c) that Navarrini's claims are also

14    unpatentable over the same art.  In this case, however, Navarrini was authorized to file a

15    supplemental communication (subsequent to the filing of its Preliminary Motion 1) explaining

16    why Grootaert '939 and WV '627 do not apply to Navarrini claims 52-57, and was thereby given

17    a chance to supplement its moving brief.  Paper 40.  Even under these extraordinary

18    circumstances, Navarrini's arguments for patentability of its own claims over Grootaert '939 and

19    WV '627 were limited to its assertions that the claim 57 compound "is farther from the

20    disclosures in the cited references than any of the Worm claims," and that  "Navarrini's

21    submissions do not support any contention that this claim is taught or suggested by any of the

22    cited references or that this claim is unpatentable."  Paper 41, p. 1.  Navarrini's unsupported

---

would not be sufficient to disqualify Grootaert '939 and WV '627 as prior art under 35 U.S.C. §103(c).  This
assertion does not establish that the relied upon prior art disclosures and the claimed invention were, at the time the
claimed invention was made, owned by the same person or subject to an obligation of assignment to the same person.
*See* 35 U.S.C. §103(c).

1    assertions are simply not sufficient to overcome the presumption that Grootaert '939 and WV

2    '627 render Navarrini's claims 52-57 unpatentable.  This is particularly true since Navarrini,

3    having already been served with Worm Preliminary Motion 2, was provided the added benefit of

4    knowing  Worm's position regarding the unpatentability of  Navarrini claims 52-57 in view of

5    the '574 publication (i.e., the equivalent to WV '627) and Grootaert '939.  Moreover, Navarrini

6    conceded that claims 52-56 overlap with Worm claims 7-9 and that the Board's findings apply to

7    these claims as well.[16]  Paper 41, p. 1

8         Accordingly, we find that Navarrini has failed to rebut the presumption that its claims 52-

9    57 are unpatentable over Grootaert '939 and/or WV '627.

10    **Navarrini Preliminary Motion 5**

11         Navarrini Preliminary Motion 5 is contingent on the existence of an involved claim which

12    is patentable to Worm.  Having determined that Worm claims 7-9 are unpatentable, this motion

13    is **dismissed** as moot.

14    **Navarrini Preliminary Motion 4**

15         Navarrini Preliminary Motion 4 is contingent on our grant of Navarrini's request to add

16    Count D (Navarrini Preliminary Motion 5) or Worm's request to substitute the count (Worm

17    Preliminary Motion 1).  Having denied these motions, Navarrini Preliminary Motion 4 is

18    **dismissed** as moot.

19

---

[16]Navarrini's position is further undermined by its concession that general formula I of WV '627 encompasses the compound of Navarrini claim 57 (*see* Paper 33, ¶ 9; Paper 60, p. 2, ¶ III).  *See, supra*, p. 31, fn.11.

1    **Worm Preliminary Motion 2**

2    In Worm Preliminary Motion 2, Worm moves for judgment that Navarrini claims 52-57

3    are unpatentable under 35 U.S.C. §§ 102 & 103 in view of PCT Publication WO 00/12574 and

4    PCT Publication WO 99/48939 to Grootaert.  Having concluded that Navarrini claims 52-57 are

5    unpatentable, this motion is **dismissed** as moot.

6

7    **OTHER MOTIONS**

8    **Worm Motion to Suppress Evidence**

9    Worm seeks to suppress portions of the cross-examination deposition of its expert, Dr.

10    Dennis Smith.  In particular, Worm seeks to suppress testimony on which Navarrini relies in

11    support of Navarrini Reply 1 (Paper 67) and Navarrini Reply 2 (Paper 68).  In Navarrini Reply 1,

12    Navarrini references Dr. Smith's testimony in support of its request that Worm claims 7-9 be

13    held unpatentable in view of Kruger even considering the portion of Smith's testimony which

14    Worm seeks to suppress.  We found Dr. Smith's testimony credible and persuasive in

15    overcoming the presumption of enablement of Kruger and concluded that Navarrini had failed to

16    establish that Worm claims 7-9 are unpatentable over Kruger.   With respect to Navarrini

17    Preliminary Motion 2, we concluded that Navarrini failed to meet its burden of proof.  Navarrini

18    Preliminary Motion 2 was denied-in-part and dismissed-in-part without reaching Worm

19    Opposition 2 or Navarrini Reply 2.  Since we need not and did not consider that portion of Dr.

20    Smith's testimony that Worm seeks to suppress in connection with Navarrini Reply 2, and since

21    our consideration of the same with respect to Navarrini Reply 1 has not prejudiced Worm,

1    Worm's Motion to Suppress Evidence is **dismissed**.

2

3          This interference is terminated and judgment is entered against both parties in a separate

4    paper. It would serve no useful purpose to continue proceedings and determine which party has

5    priority to an invention that is not patentable to either party.

6    **IV.    ORDER**

7          Upon consideration of the record, and for the reasons given, it is:

8          **ORDERED** that Navarrini Preliminary Motion 1 is *granted-in-part.*

9          **FURTHER ORDERED** that Navarrini  Preliminary Motion  2 is *denied-in-part and*

10   *dismissed-in-part.*

11         **FURTHER ORDERED** that Navarrini  Preliminary Motions 3-5 are *dismissed.*

12         **FURTHER ORDERED** that Worm Preliminary Motions 1 and 3 are *denied.*

13         **FURTHER ORDERED** that Worm  Preliminary Motion 2 is  *dismissed.*

14         **FURTHER ORDERED** that Worm's Motion to Suppress Evidence is *dismissed.*

15         **FURTHER ORDERED** that a copy of this decision shall be placed and given a paper

16   number in the files of U.S. Patent 6,255,536 and U.S. Application 09/840,582.

17         **FURTHER ORDERED** that if there is a settlement agreement, attention is directed to

18   35 U.S.C. § 135(c) and 37 CFR § 41.205.

19

20

21

Interference No. 105,130
Page 56

/Sally C. Medley/      )
ADMINISTRATIVE PATENT JUDGE    )
                           )
/Linda M. Gaudette/       ) BOARD OF PATENT
ADMINISTRATIVE PATENT JUDGE    )   APPEALS AND
                           ) INTERFERENCES
/Mark Nagumo/         )
ADMINISTRATIVE PATENT JUDGE    )

cc (via overnight delivery):

Counsel for NAVARRINI:

     John R. Kenny, Esq.
     KENYON & KENYON
     1 Broadway
     New York, New York   10004

     Tel:    212-425-7200

Counsel for WORM:

     Steven B. Kelber, Esq.
     MERCHANT & GOULD
     901 Fifteenth Street, N.W., Suite 850
     Washington, D.C.   20005

     Tel:    202-326-0428